[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-12050
Non-Argument Calendar
_____

Agency No. A097-957-410

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 18, 2009
THOMAS K. KAHN
CLERK

JIAN HUA ZHENG,
a.k.a. Jianhua Zheng,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(December 18, 2009)

Before CARNES, MARCUS and FAY, Circuit Judges.

PER CURIAM:

Jian Hua Zheng, a native and citizen of China, petitions for review of the Bureau of Immigration Appeals' ("BIA's") decision affirming the Immigration Judge's ("IJ's") order denying his application for asylum, withholding of removal, and relief under the Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"). For the reasons set forth below, we deny Zheng's petition for review.

**I.**

In his application for asylum, withholding of removal, and CAT relief, Zheng argued that if he returned to China, he could be detained, fined, abused, tortured, or forcibly sterilized, because he violated China's family planning policy and left the country illegally.

At his asylum hearing, Zheng testified that his wife, Mei Yu, gave birth to their son in 1997 in Liang Jian City Hospital. At the end of January 1998, village officials came to his home and told Mei Yu to have an Intrauterine Device ("IUD") inserted within one week or Zheng and Mei Yu would suffer consequences. Village officials returned in February, took Mei Yu to the local family planning office, and forced her to have an IUD inserted. Mei Yu was instructed to return every four months for an IUD check up. In July 2004, Zheng and Mei Yu requested permission from the Village Family Planning Office to have additional children. The officials denied the request and stated that, if Mei Yu became

pregnant again, they would force her to have an abortion and sterilize either Zheng or Mei Yu.

In September 2004, Mei Yu had her IUD removed by a private doctor and never reported for another IUD check up. After missing two IUD check ups, a village official informed Zheng's mother that, if officials discovered that Mei Yu was pregnant, they would abort the child. In June 2005, a private doctor confirmed that Mei Yu was pregnant. Zheng and Mei Yu decided to leave China and give birth to their child in America. Zheng left China when Mei Yu was "[a] little bit over two months" pregnant. Mei Yu subsequently left China, but suffered a miscarriage in August 2005, while passing through Holland. Four days later, Mei Yu was taken to Belgium, where she saw a doctor. Zheng testified that his wife had not sought political asylum in Holland or Belgium, and that she was currently in Belgium waiting for a smuggler to bring her to America. Zheng acknowledged that he had been in France for a two or three hour layover before coming to the United States, but he did not seek asylum in France because he wanted to come to America.

In support of his asylum claim, Zheng submitted letters from family members setting forth the same facts about which he testified. He also submitted a copy of his son's birth certificate, which did not include Zheng's identification number or the full identification number for Mei Yu.

3

The IJ "accorded minimal weight to the family letters and letters that had been submitted by this respondent's family," because of "the self-serving nature of all of this material." The IJ also noted that the United States State Department's "Profile of Asylum Claims and Country Conditions" indicated that documents from Fujian Province were subject to widespread fabrication and fraud. The IJ noted that Zheng's son's birth certificate did not include Zheng's identity card number and did not include the full identity number of Zheng's wife. He pointed out that Zheng offered no documentary evidence in support of his claim that his wife had the IUD removed by a private physician or had suffered a miscarriage. The IJ also found that Zheng "ha[d] not shown anything other than a desire to migrate to the United States," because he failed to seek asylum in France. The IJ determined that Zheng's testimony was not sufficiently credible to meet his burden of proof on the asylum claim. The IJ also denied Zheng's claims for withholding of removal and CAT relief.

Zheng appealed to the BIA, arguing that his testimony was credible, that he had described in detail his past persecution and fear of future persecution, and that the IJ improperly applied the Real ID Act.

The BIA found that Zheng's testimony regarding his alleged persecution in China was insufficient to meet his burden of proof for asylum, because his "testimony was weak and his corroboration insufficient." Based on Zheng's

4

testimony that his wife had not sought asylum in Belgium and that Zheng did not seek asylum in France, the BIA determined that the IJ reasonably found that Zheng wanted to come to the United States for economic reasons. It pointed out that Zheng failed to explain why his son's birth certificate did not include Zheng's identification number or a complete identification number for his wife. The BIA also found that the insertion of an IUD did not constitute past persecution to Zheng and that Zheng was not persecuted on account of the IUD removal. The BIA explained that, because Zheng failed to meet his burden of proof with respect to his asylum claim, he also necessarily failed to meet the burden of proof required to establish eligibility for withholding of removal. Finally, the BIA determined that Zheng was not eligible for relief under the CAT, because he failed to show that he, more likely than not, would be tortured upon his return to China.

## II.

We review only the BIA's decision, except to the extent that the BIA expressly adopts the IJ's opinion or reasoning. *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). Here, the BIA did not expressly adopt the IJ's order, so we review the BIA's order. When reviewing an order of the BIA, we review legal issues *de novo*. *Hernandez v. U.S. Att'y Gen.*, 513 F.3d 1336, 1339 (11th Cir. 2008). The BIA's factual findings are reviewed under the substantial evidence test. *Al Najjar*, 257 F.3d at 1283. Under this test, we must affirm the BIA's decision if

5

it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* at 1284.

> ### *Asylum and Withholding of Removal*

The BIA must make an explicit and clean determination of the credibility of an asylum applicant's testimony. *Yang v. U.S. Att'y Gen.*, 418 F.3d 1198, 1201 (11th Cir. 2005). Credible testimony may be sufficient to support an applicant's asylum claim, even if the applicant did not present any corroborating evidence. 8 C.F.R. § 208.13(a). "The weaker an applicant's testimony, however, the greater the need for corroborative evidence." *Yang*, 418 F.3d at 1201.

An alien may establish eligibility for asylum if he shows that he has suffered either "past persecution" or has a "well-founded fear" of future persecution based on his race, religion, nationality, membership in a particular social group, or political opinion. 8 C.F.R. § 208.13(b); *Chen v. U.S. Att'y Gen.*, 513 F.3d 1255, 1257 (11th Cir. 2008). "To establish asylum based on *past* persecution, the applicant must prove (1) that []he was persecuted, and (2) that the persecution was on account of a protected ground." *Sanchez Jimenez v. U.S. Att'y Gen.*, 492 F.3d 1223, 1232 (11th Cir. 2007); 8 C.F.R. § 208.16(b). A well-founded fear may be established by showing (1) past persecution that creates a presumption of a "well-founded fear" of future persecution, (2) a reasonable possibility of being singled out for persecution that cannot be avoided by relocating within the subject country,

6

or (3) a pattern or practice in the subject country of persecuting members of a statutorily defined group of which she is a part.  8 C.F.R. § 208.13(b)(1), (2), (3)(i).

An alien is entitled to withholding of removal under the INA if he can show "that his life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion." *Mendoza v. U.S. Att'y Gen.*, 327 F.3d 1283, 1287 (11th Cir. 2003).  This standard is more stringent than the "well-founded fear" standard for asylum; thus, if an applicant is unable to meet the "well-founded fear" standard, he necessarily is unable to qualify for withholding of removal.  *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1288 n.4 (11th Cir. 2005).

Congress has provided by statute that forced abortion, forced sterilization, and other coercive population control measures are forms of political persecution:

> For purposes of determinations under this chapter, a person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

8 U.S.C. § 1101(a)(42).  We have noted that "[t]here is very little case law

7

analyzing the 'other resistance' clause in [§ 1101(a)(42)]." *See Yang*, 418 F.3d at 1203. In *Yang*, we held that Yang's "claim that she was forced to undergo an atrocious injection procedure to which she fought back by kicking and screaming" could constitute "other resistance to a coercive population control program." *Id.* We distinguished Yang's case from a case in which the petitioner had left the IUD in place while residing in the United States and failed to allege "force, physical abuse, or other equivalent circumstances," noting that Yang twice removed her IUD and alleged physical and verbal resistance to the IUD insertion. *Id.* at 1205 n.8.

We have also held that a husband is not automatically entitled to asylum based solely on his wife's forced abortion or sterilization. *See Yu v. U.S. Att'y Gen.*, 568 F.3d 1328, 1332 (11th Cir. 2006). Instead, the husband must show that he personally was persecuted either by being forcibly sterilized or by resisting a country's coercive family planning policy. *See id.* at 1333. Alternatively, a husband may show that he has a well-founded fear of being forced to undergo involuntary sterilization or future persecution for resisting a coercive population control measure. *See id.*

As an initial matter, although the BIA repeatedly characterized Zheng's testimony as weak, it did not expressly state that his testimony was incredible. Because the BIA did not make an explicit adverse credibility determination, we

accept Zheng's testimony as true. *See Yang*, 418 F.3d at 1201; *Meija v. U.S. Att'y Gen.*, 498 F.3d 1253, 1255 n.2 (11th Cir. 2007) (noting that we will accept a petitioner's testimony as true if the BIA fails to make an adverse credibility finding).

Even accepting Zheng's testimony as true, the BIA's determination that Zheng did not suffer past persecution is supported by substantial evidence. Neither Zheng nor Mei Yu were forcibly sterilized and Mei Yu was never forced to have an abortion. Although Mei Yu was forced to have an IUD inserted against her will, it is not clear that the IUD insertion, in the absence of the aggravating circumstances present in *Yang*, constituted persecution. *See Yang*, 418 F.3d at 1203 (noting that Yang physically resisted the "atrocious" IUD injection procedure). Moreover, because a husband is not automatically entitled to asylum based on his wife's forced abortion or sterilization, it follows that Zheng is not automatically entitled to asylum based solely on his wife's forced IUD insertion. *See Yu*, 568 F.3d at 1332.

It also does not appear that Zheng personally was persecuted "for other resistance to a coercive population control program." *See* 8 U.S.C. § 1101(a)(42). Although Zheng testified that Mei Yu had the IUD removed by a private doctor, there is no evidence that Zheng was persecuted because of this. Zheng testified that family planning officials visited his home and threatened to forcibly abort Mei

9

Yu's child if she was found to be pregnant. However, there is no evidence that officials actively searched for Zheng while he was in hiding at his sister's house. Furthermore, because we have held that a husband is not automatically entitled to asylum based on his wife's forced abortion, it follows that a husband is not automatically entitled to asylum based on threats to perform a forced abortion on his wife. *See Yu*, 568 F.3d at 1332.

Zheng also testified that he feared future persecution if he returned to China because he and his wife violated the family planning laws and left China illegally. The documentary evidence in the record renders this fear objectively unreasonable. The State Department's "Profile of Asylum Claims and Country Conditions" states that the Chinese government "accepts the repatriation of citizens who have entered other countries or territories illegally," that such individuals are rarely fined, and that "U.S. officials in China have not confirmed any case of abuse of persons returned to China from the U.S. for illegal entry." Furthermore, Zheng and Mei Yu have only one child and the evidence in the record establishes that, if forced sterilizations are performed, they are performed only after the birth of an out-of-plan child. Thus, Zheng does not appear to be in danger of being forcibly sterilized if he is returned to China. Finally, Zheng failed to show that relocation within China would be unreasonable, especially in light of documentary evidence stating that enforcement of China's family planning policy varies widely

throughout the country and that relocation within China "is more of a possibility than previously, especially for those with access to money."  8 U.S.C. § 208.13(b)(2) (providing that "[a]n applicant does not have a well-founded fear of persecution if the applicant could avoid persecution by relocating to another part of the applicant's country of nationality").

Zheng's arguments that the IJ erred in (1) discrediting letters submitted by his family members, (2) requiring him to provide copies of his wife's medical records, and (3) discrediting of his son's birth certificate, are unavailing.  The facts set forth in the letters from Zheng's family members were also set forth in Zheng's testimony, which we consider to be truthful, because the BIA failed to make an explicit adverse credibility determination.  *See Yang*, 418 F.3d at 1201; *Meija*, 498 F.3d at 1255 n2.  Similarly, we accept as true the fact that Mei Yu suffered a miscarriage in Holland and that Zheng and Mei Yu had a son.  However, as noted above, Zheng has failed to establish, even in light of these facts, that he suffered past persecution or had a well-founded fear of future persecution. Accordingly, we deny Zheng's petition for review of the BIA's order denying asylum and withholding of removal.

### *CAT Relief*

The government argues that Zheng waived any challenge to the BIA's denial of his application for CAT relief.

11

In his brief, Zheng mentions the CAT only once, stating that "an alien seeking withholding of removal under the Convention Against Torture ("C.A.T.") has the burden of showing that he would more likely than not be tortured if removed." Because Zheng, who is represented by counsel, simply cited the standard of proof for CAT claims rather than presenting any arguments in support of his own claim for CAT relief, he has abandoned any argument pertaining to the denial of his application for CAT relief. *See Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (stating that, "[w]hen an appellant fails to offer argument on an issue, that issue is abandoned"). Accordingly, we deny Zheng's petition for review.

**DENIED.**