[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 27, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-16068
Non-Argument Calendar

_____

Agency No. A097-660-550

DE QUAN YU,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(May 27, 2009)

Before BIRCH, CARNES and PRYOR, Circuit Judges.

PER CURIAM:

De Quan Yu petitions for review of the final order of the Board of Immigration Appeals ("BIA"), which affirmed the Immigration Judge's ("IJ's") denial of his claims for asylum and withholding of removal under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq., and relief under the United Nations Convention Against Torture ("CAT"). Yu, a native and citizen of China, asserts that he is entitled to per se refugee status based on the forced abortion and sterilization of his wife. We disagree and deny the petition.

## I. BACKGROUND

In October 2003, Yu received a notice to appear charging him with entering the United States without a valid entry document, in violation of § 212(a)(7)(A)(i)(I) of the INA. Yu conceded removability and filed for asylum, withholding of removal, and CAT protection.

At the asylum hearing, Yu claimed that the Chinese government persecuted him by forcing his wife to insert an intrauterine device ("IUD"), abort a pregnancy, undergo sterilization, and pay a fine. Specifically, Yu testified that his wife was forced to have an IUD inserted following the birth of their first child, a daughter. Despite the IUD, his wife became pregnant again and was forced to undergo an abortion. When Yu's wife had a second daughter, authorities tried to arrest Yu. Yu and his wife went into hiding to avoid sterilization of Yu's wife. After Yu fled China alone, his wife gave birth a few months later to their third daughter. Yu's

2

wife was then arrested and forcibly sterilized. She was also fined a registration fee for their third child. Yu's wife remains in China with her daughters. Yu believes that if he returns to China he will be imprisoned for leaving China illegally and be fined.

The IJ found that Yu did not testify credibly that his wife's IUD, abortion, and sterilization were involuntary. Accordingly, the IJ found that Yu was not persecuted and did not have a well-founded fear of future persecution. On appeal, the BIA found the IJ's adverse credibility finding was clearly erroneous, vacated the removal order, and remanded the case for further proceedings. Neither party submitted additional evidence on remand. The IJ again found that Yu was not credible and denied his claims for asylum, withholding of removal, and CAT relief.

The BIA dismissed the appeal. Regardless of the IJ's credibility finding, the BIA concluded that the case was governed by the Attorney General's intervening precedential decision in Matter of J-S-, 24 I. & N. Dec. 520, 523-24 (A.G. 2008), which held that a spouse is not automatically eligible for refugee status based on the forced abortion or sterilization of his or her partner. The BIA noted that Matter of J-S- requires such a spouse to show that he himself suffered persecution or has a well-founded fear of suffering future persecution for failure or refusal to undergo such a procedure, or for other resistance to a coercive-population control program. The BIA found that Yu had not personally suffered any past persecution and he did

3

not have a well-founded fear of future persecution based on his and his wife's violation of China's one-child policy. Accordingly, the BIA concluded that Yu was ineligible for asylum and withholding of removal. The BIA also concurred with the IJ that Yu had failed to meet his burden of proof for CAT protection.

In his petition, Yu claims the BIA's retroactive application of Matter of J-S- violated his due process rights because it renders him ineligible for asylum and withholding of removal.[1] Yu argues that previous BIA decisions entitled him to automatic refugee status based on his wife's forced abortion and sterilization.

## II. DISCUSSION

We review only the BIA's decision, except to the extent the BIA expressly adopted the IJ's reasoning. See Lin v. U.S. Att'y Gen., 555 F.3d 1310, 1314 (11th Cir. 2009). We review legal conclusions de novo. See id. Factual findings are reviewed under the substantial evidence test and are left undisturbed if "supported by reasonable, substantial, and probative evidence." Id. (quotation marks and citation omitted). We cannot reverse factual findings unless the record compels it; "the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Ruiz v. U.S. Att'y Gen., 440 F.3d

---

[1] Apart from a general reference to the BIA's decision in the statement of jurisdiction, Yu does not argue that the BIA erred in denying CAT relief. Yu has therefore abandoned this claim. See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (per curiam) ("When an appellant fails to offer argument on an issue, that issue is abandoned.").

4

1247, 1255 (11th Cir. 2006) (per curiam) (quotation marks and citation omitted).

At issue is whether Yu qualifies as a "refugee" entitling him to asylum under the following INA provision:

> [A] person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

8 U.S.C. § 1101(a)(42)(B). In interpreting this provision, the BIA agreed with the initial position of the Immigration and Naturalization Service ("INS") that "past persecution of one spouse can be established by coerced abortion or sterilization of the other spouse." In re C-Y-Z-, 21 I. & N. Dec. 915, 917, 919 (BIA 1997) (en banc).[2] The BIA restricted spousal asylum under this provision to those who were legally married under Chinese law, not merely dating or engaged. See In re S-L-L, 24 I. & N. Dec. 1, 8-9 (BIA 2006).[3]

---

[2] Many circuits followed the BIA's interpretation in C-Y-Z-. See, e.g., Lin-Jian v. Gonzales, 489 F.3d 182, 188 (4th Cir. 2007); Chen v. Gonzales, 457 F.3d 670, 674 (7th Cir. 2006); Hong Zhang Cao v. Gonzales, 442 F.3d 657, 660 (8th Cir. 2006); Tai v. Gonzales, 423 F.3d 1, 4 (1st Cir. 2005); Zhang v. Ashcroft, 395 F.3d 531, 532 (5th Cir. 2004); He v. Ashcroft, 328 F.3d 593, 604 (9th Cir. 2003).

[3] In Yang v. U.S. Attorney General, 494 F.3d 1311, 1317 (11th Cir. 2007) (per curiam), we concluded that the BIA's decision in S-L-L- to deny derivative protection to unmarried fathers of aborted children was reasonable "assuming husbands of women who were forced to have an abortion are entitled to asylum for that reason." However, because Yang conceded that

In 2008, the Attorney General overruled the BIA's interpretation of § 1101(a)(42)(B) in C-Y-Z- and S-L-L- to the extent those cases established automatic spousal eligibility. See Matter of J-S-, 24 I. & N. Dec. at 523. Based on the statute's text, structure, history, and purpose, the Attorney General concluded that "spouses are not entitled to the same per se refugee status that [§ 1101(a)(42)(B)] expressly accords persons who have physically undergone forced abortion or sterilization procedures." Id. at 523-24. Instead, in order for a spouse who has not physically undergone such a procedure to qualify as a refugee under § 1101(a)(42)(B), the Attorney General held that a spouse must show persecution or a well-founded fear of future persecution based on his or her "failure or refusal" to undergo such a procedure or "other resistance" to a coercive population control program. Id. at 537-38.

Consistent with Matter of J-S-, two of our sister circuits have published opinions holding that the plain language of § 1101(a)(42)(B) does not extend automatic refugee status to spouses of individuals who underwent forced abortions or sterilizations. See Lin-Zheng v. Att'y Gen., 557 F.3d 147, 156-57 (3d Cir. 2009) (en banc); Shi Liang Lin v. U.S. Dep't of Justice, 494 F.3d 296, 314 (2d Cir. 2007) (en banc) (denying automatic refugee status to spouses, fiancés, or

he was not Ling's legal spouse, we had no need to decide whether the BIA's interpretation of the refugee statute in C-Y-Z- was entitled to deference. See Yang, 494 F.3d at 1317.

boyfriends).

We have not yet published an opinion deciding whether § 1101(a)(42)(B) confers automatic refugee status on the spouse of a woman who has undergone a forced abortion or involuntary sterilization, or whether Matter of J-S- is entitled to deference under Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S. Ct. 2778 (1984). See Lin, 555 F.3d at 1315. Those issues were left unresolved in Lin because the applicant and his partner were not legally married. See id. (concluding only that "unmarried partners like Lin do not automatically qualify for protection under the forced abortion and sterilization provisions of the INA"). Yu's case squarely presents both issues, however, because Yu is lawfully married to the person who underwent the forced procedures. As these questions implicate an agency's interpretation of a statute it administers, we must apply Chevron's two-step inquiry. See Castillo-Arias v. U.S. Att'y Gen., 446 F.3d 1190, 1195 (11th Cir. 2006).

Our first task under Chevron is to determine Congressional intent. See Scheerer v. U.S. Att'y Gen., 513 F.3d 1244, 1250 (11th Cir. 2008). "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id. (quotation marks and citation omitted). Where the statute is silent or ambiguous, we proceed to the second step, which requires us to determine whether the

agency's interpretation is a "permissible construction of the statute." Id. (quotation marks and citation omitted). The fact that the agency or even the court could have interpreted the statute differently is of no matter. See id. So long as an agency's interpretation is reasonable, it is controlling. See id. A reasonable interpretation is one that is not "arbitrary, capricious, or manifestly contrary to the statute." Id. (quotation marks and citation omitted). Moreover, our deference to an agency's interpretation is "especially great in the field of immigration." See Lin, 555 F.3d at 1315 n.4 (quotation marks and citation omitted).

We begin by assessing whether § 1101(a)(42)(B) clearly reflects a Congressional intent to grant automatic refugee status to a spouse who has not physically undergone a forced abortion or sterilization. As usual, the statute's language is the starting point. See Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1167 (11th Cir. 2003). We have previously recognized that "[t]he decision to allow husbands to claim refugee status because their wives were forced to have abortions was based solely on the BIA's interpretation of the refugee statute in C-Y-Z- and S-L-L-, and not on anything Congress explicitly said in § 1101(a)(42)." Yang, 494 F.3d at 1317. The term Congress used in the statute was "person"; there is no mention or reference to that person's "spouse." 8 U.S.C. § 1101(a)(42)(B). As the Third Circuit noted, a "person" ordinarily refers to one human being. See Lin-Zheng, 557 F.3d at 156. "Had Congress wished to extend protection to that

8

person's spouse, it could easily have defined 'refugee' to include the person persecuted as well as his or her spouse." Id.

Moreover, outside of the "other resistance" clause, the qualifying "person" is the one who was "forced to abort a pregnancy or to undergo involuntary sterilization," or was persecuted for failing or refusing to undergo such a procedure. 8 U.S.C. § 1101(a)(42)(B). This language plainly includes only those individuals who actually underwent the medical procedure or were persecuted for not doing the procedure. Equally revealing is the statute's reference to a person's well-founded fear "that *he or she* will be forced to undergo such a procedure" or be subject to future persecution. 8 U.S.C. § 1101(a)(42)(B) (emphasis added). Our sister circuits logically reasoned that both pronouns would not have been needed if Congress intended to confer automatic refugee status on the spouse who did not physically undergo the forced procedure. See Lin-Zheng, 557 F.3d at 156; Shi Liang Lin, 494 F.3d at 306.

"[W]e must presume that Congress said what it meant and meant what it said." Shotz, 344 F.3d at 1167 (quotation marks and citation omitted). Additionally, we must assume that "the ordinary meaning" of a statute's language "accurately expresses the legislative purpose." Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 194, 105 S. Ct. 658, 661 (1985). Applying these presumptions, we conclude that the plain language of § 1101(a)(42)(B) clearly and

9

unambiguously reflects Congressional intent to protect only the person who: (1) physically underwent the forced abortion or involuntary sterilization, (2) was persecuted for failing or refusing to undergo such a procedure or for other resistance to a coercive population control program, or (3) has a well-founded fear of being forced to undergo such a procedure or being persecuted in the future for such failure, refusal, or resistance. See 8 U.S.C. § 1101(a)(42)(B).

We therefore agree with the Second and Third Circuits that § 1101(a)(42)(B) does not confer automatic refugee status on an individual merely because his or her spouse (or unmarried partner) underwent a forced abortion or sterilization. See Shi Liang Lin, 494 F.3d at 314; Lin-Zheng, 557 F.3d at 156-57. Rather, the person who did not physically undergo the forced procedure, or is not subject to a well-founded fear of one, must establish "actual persecution for resisting a country's coercive family planning policy, or a well-founded fear of future persecution for doing so." Lin-Zheng, 557 F.3d at 157. In simple terms, persecution, or the fear thereof, must be personally endured by the applicant.

Even if we were to find that the statute's language was somehow ambiguous on this issue, we conclude that the Attorney General's identical interpretation of § 1101(a)(42)(B) in Matter of J-S- is reasonable and entitled to deference. The Attorney General considered numerous factors in reaching his conclusion, including the statute's purpose and interaction with other INA asylum provisions.

10

One notable concern was the reconciliation of § 1101(a)(42)(B) with the requirements of derivative asylum set forth in 8 U.S.C. §1158(b)(3)(A). See Matter of J-S-, 24 I. & N. at 530. The latter provision allows an alien's spouse (or child), who does not otherwise qualify for asylum, to be granted derivative asylum only if they are "accompanying, or following to join" the persecuted individual. 8 U.S.C. §1158(b)(3)(A). As the Attorney General explained, interpreting § 1101(a)(42)(B) to provide for automatic refugee status on all spouses of persons who have undergone a forced abortion or sterilization, even if those spouses did not themselves qualify as refugees or accompany a qualifying alien, would circumvent the explicit requirements of derivative asylum under §1158(b)(3)(A). See Matter of J-S-, 24 I. & N. at 530. Similarly, the BIA's prior interpretation in C-Y-Z- would conflict with the INA's general requirement in §1158(b)(1)(B)(i) that every asylum applicant bears the burden of proving his or her own refugee status. See id. Affording the agency its due deference, we cannot say that the Attorney General's interpretation of § 1101(a)(42)(B) was arbitrary, capricious, or clearly contrary to the law. Matter of J-S- is therefore controlling. See Scheerer, 513 F.3d at 1250.

Furthermore, we reject Yu's contention that the BIA's decision in his case involved an improper retroactive application of Matter of J-S-. The BIA did not retroactively apply a new law but instead applied the Attorney General's

11

determination of what the law "had *always* meant." Rivers v. Roadway Exp., Inc., 511 U.S. 298, 313, n. 12, 114 S. Ct. 1510, 1519 n.12 (1994) (concluding that the Supreme Court's judicial construction of a statute did not change the prevailing law but merely decided the statute's original meaning and explained why the Courts of Appeals had misinterpreted Congressional intent). A ruling by the Attorney General on all questions of law arising under the INA is controlling. See Negusie v. Holder, ___ U.S. ___, 129 S. Ct. 1159, 1164 (2009); 8 U.S.C. § 1103(a)(1). Although the Attorney General has delegated to the BIA its authority to decide legal questions, the Attorney General still retains power to review the BIA's final decisions. See Farquharson v. U.S. Att'y Gen., 246 F.3d 1317, 1323 n.7 (11th Cir. 2001). Here, the Attorney General's ruling in Matter of J-S- clarified the correct interpretation of the law; it did not change the law. The fact that the BIA had previously construed the statute differently in C-Y-Z- and S-L-L- did not prohibit the Attorney General from holding otherwise.

Nor did Yu's reliance on the BIA's prior decisions bar application of Matter of J-S- to his pending administrative proceeding. "The essence of judicial decisionmaking . . . necessarily involves some peril to individual expectations because it is often difficult to predict the precise application of a general rule until it has been distilled in the crucible of litigation." Rivers, 511 U.S. at 312, 114 S. Ct. at 1519. Once the Attorney General clarified the meaning of § 1101(a)(42)(B)

12

in Matter of J-S-, that decision became the controlling interpretation of the law and was entitled to full retroactive effect in all cases still open on direct review, regardless of whether the events predated the Attorney General's decision. See id. at 312, 114 S. Ct. at 1519. Matter of J-S- may have dashed Yu's hopes of success but it did not impair any vested right. See Tefel v. Reno, 180 F.3d 1286, 1302 (11th Cir. 1999) (explaining that applying a rule "to pending administrative proceedings merely upsets expectations based in prior law and does not impair *rights* a party possessed when he [or she] acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed" (quotation marks and citation omitted)). Accordingly, the BIA correctly analyzed Yu's asylum application under Matter of J-S-.

Turning back to the facts of this case, we conclude that substantial evidence supports the BIA's finding that Yu has not shown that he personally suffered any past persecution or that he has a well-founded fear of future persecution. Yu bases his asylum claim entirely on the BIA's prior decisions in C-Y-Z- and S-L-L-. Consequently, the only evidence of persecution that Yu cites is his wife's forced abortion and sterilization, and payment of the fine for their third child. Yu does not assert any "other resistance" claim. According to the BIA, the term "resistance" may include "expressions of general opposition, attempts to interfere with enforcement of government policy in particular cases, and other overt forms

13

of resistance to the requirements of the family law." In re S-L-L-, 24 I. & N. Dec. at 10. To the extent that Yu's hiding from authorities with his wife to avoid her sterilization could be construed as "other resistance," Yu has failed to show that he was persecuted because of that resistance. See Lin, 555 F.3d at 1316. The fact that authorities fined Yu and tried to arrest him, but never detained or physically harmed him, is insufficient to establish past persecution. See id. (concluding that Lin was not persecuted because he was only fined and threatened with arrest).

Likewise, Yu's professed fear of future persecution stems solely from his wife's abortion and sterilization, and payment of the fine.[4] Yu does not argue that he will face future persecution by being forced to undergo sterilization himself, or for refusing to undergo such a procedure or otherwise resisting China's family planning policy. Yu has thus also failed to establish a well-founded fear of future persecution. See Matter of J-S-, 24 I. & N. Dec. at 537-38.

Accordingly, we affirm the BIA's decision that Yu is ineligible for asylum under § 1101(a)(42). Since Yu does not qualify for asylum, he necessarily fails to satisfy the more stringent standard of proof for withholding of removal. See Lin, 555 F.3d at 1317.

---

[4] Although Yu testified at the asylum hearing that he would be imprisoned and fined for leaving China illegally, Yu does not reassert this claim in his petition to us. Even if he had, we note that prosecution for leaving China illegally is not a statutorily protected ground entitling an alien to asylum. See Lin, 555 F.3d at 1316.

### III. CONCLUSION

Pursuant to the statute's plain language, we conclude that § 1101(a)(42)(B) does not grant automatic refugee status to a spouse based solely on the other spouse's forced abortion or sterilization. The BIA correctly evaluated Yu's claims under Matter of J-S- to determine that Yu did not personally suffer past persecution or have a well-founded fear of future persecution on account of his wife's forced abortion and sterilization. Because the record does not compel a contrary finding, we DENY the petition.

**PETITION DENIED.**