[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 12, 2010
JOHN LEY
CLERK

No. 09-10643
Non-Argument Calendar

_____

Agency No. A098-559-040

LIU TIAN-LIANG,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(March 12, 2010)

Before BIRCH, BARKETT and ANDERSON, Circuit Judges.

PER CURIAM:

Liu Tian-Liang, proceeding *pro se*, petitions for review of the Board of Immigration Appeals' ("BIA") final order denying asylum and withholding of removal.[1]  Tian-Liang, a native and citizen of China, asserts that he suffered past persecution and has a well-founded fear of future persecution based on the events surrounding his fiance's forced abortion.  Upon careful review, we DENY the petition.

## I.  BACKGROUND

In December 2004, Tian-Liang received a notice to appear charging him with removability based on his alleged entry into the United States on 14 November 2004 without a valid entry document.  In July 2005, Tian-Liang filed for asylum, withholding of removal, and CAT relief based on his political opinion; namely, his opposition to China's coercive family planning policy.  He submitted a supplemental statement in April 2008, in which he detailed his verbal protests against his fiancee's forced abortion.

Tian-Liang conceded removability and testified as follows at a hearing before an immigration judge ("IJ").  In February 2004, Tian-Liang, then 22 years old, impregnated his 20-year-old fiancee.  Neither of them had reached the legal age of marriage in China but they nevertheless decided to keep the baby.  On 20

---

[1] As Tian-Liang does not appeal the BIA's denial of relief under the United Nations Convention Against Torture, he has abandoned this claim.  See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (per curiam).

May 2004, village and family planning officials came to Tian-Liang's home and took his fiancee to the hospital for an abortion. Tian-Liang pleaded with the doctors to spare his unborn child and allow him to pay a fine instead. He also expressed his disagreement with the family planning law. Tian-Liang became so agitated and loud that hospital officials threatened to report him to the police. After Tian-Liang calmed himself, he waited alone until the abortion was over and was then permitted to see his fiancee. She told him that she never agreed to the abortion but was forced to have one by the doctors and family planning officials. Although Tian-Liang asked for documentation of the abortion, the hospital refused to provide any.

About a week later, local family planning officials instructed Tian-Liang to report to the village family planning office in order to pay a 3000 yuan fine for the unauthorized pregnancy and to explain why he had made a scene at the hospital. Tian-Liang did not pay the fine or report as told because he feared the officials would detain him for illegally impregnating his fiancee. Instead, Tian-Liang left his village at the end of May 2004 to hide at his cousin's home in the Sichuan province. According to Tian-Liang, the family planning officials did not pursue his family or fiancee after he left because they were only interested in finding him. His fiancee and parents continue to reside in the same village in the Fujian province.

3

Tian-Liang left China in October 2004. If he returned to China, he believed he would be fined, possibly up to five to ten times more than before. Tian-Liang also believed he would be sentenced for not paying his previous fine and for having a child with his fiancee before he reached the legal marriage age, in violation of China's family planning law.

The IJ did not make an express finding concerning Tian-Liang's credibility, although the IJ noted that his "11th hour presentation of a supplemental statement" was "highly suspect." Administrative Record ("AR") at 58. Even assuming that Tian-Liang did protest his fiancee's abortion, however, the IJ found that the government never persecuted him for it. Rather, Tian-Liang was merely admonished to be quiet and later fined. The IJ also concluded that Tian-Liang did not have a well-founded fear of future persecution. Accordingly, the IJ ordererd that Tian-Liang be removed to China based on the denial of asylum, withholding of removal, and CAT relief.

The BIA agreed with the IJ that Tian-Liang was not persecuted and did not have a well-founded fear of persecution on account of his resistance to China's family planning policies. Specifically, the BIA noted that Tian-Liang never testified that the family planning authorities harmed or mistreated him. As for future persecution, the BIA found that the imposition of the 3000 yuan fine was insufficient to constitute persecution, and there was no documentary evidence to

4

support speculation that his fine would be increased five to ten times. The record also indicated that Tian-Liang's fiancee had not suffered any harm or mistreatment, other than "pressure," due to her non-payment of the fine. Id. at 3. The fact that Tian-Liang successfully relocated to the Sichuan province for several months before leaving China indicated that he did not suffer, and was not in danger of suffering, any adverse consequences for his failure to report to the village family planning office. The BIA ultimately concluded that Tian-Liang was ineligible for asylum, withholding of removal, and CAT relief.

This petition for review followed.

## II. DISCUSSION

Our review is limited to the BIA's decision, except to the extent the BIA expressly adopted the IJ's reasoning. Lin v. U.S. Att'y Gen., 555 F.3d 1310, 1314 (11th Cir. 2009). We review de novo all legal conclusions, but review factual findings under the substantial evidence test. Id. That test "requires us to affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. (quotation marks and citation omitted).

An alien may be granted asylum if he shows that he suffered past persecution or has a well-founded fear of future persecution on account of a protected ground, such as his political opinion. See 8 U.S.C. § 1101(a)(42)(A) (2009). A person who undergoes a forced abortion is "deemed to have been

persecuted on account of political opinion." Id. § 1101(a)(42)(B).  However, the spouse or unmarried partner of such an individual does not automatically qualify for asylum protection under § 1101(a)(42)(B).  See Yu v. U.S. Att'y Gen., 568 F.3d 1328, 1332 (11th Cir. 2009) (per curiam).  "Rather, the person who did not physically undergo the forced procedure, or is not subject to a well-founded fear of one, must establish actual persecution for resisting a country's coercive family planning policy, or a well-founded fear of future persecution for doing so." Id. at 1333.

The record here fails to establish that Tian-Liang suffered past persecution. According to Tian-Liang's own testimony, the only actions the government took after he verbally protested his fiancee's forced abortion were: (1) a warning to calm down or face detention by the police; (2) a 3000 yuan fine; and (3) an instruction to report to the local family planning office to explain his disruptive behavior at the hospital.  Viewing the evidence in the totality of the circumstances, these actions do not rise to the level of past persecution.  See Lin, 555 F.3d at 1316 (finding no past persecution where petitioner was fined and threatened with arrest but not detained or physically injured during his encounter with family planning officials); Kazemzadeh v. U.S. Att'y Gen., 577 F.3d 1341, 1353 (11th Cir. 2009) (finding no past persecution where petitioner was interrogated and detained for four days, subsequently monitored by Iranian authorities, and summoned to appear

6

before a university discipline committee and an Islamic court).

Tian-Liang has also failed to establish that he has a well-founded fear of future persecution. To establish a well-founded fear of future persecution, Tian-Liang must show that he has a subjectively genuine fear that is objectively reasonable. See Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1257 (11th Cir. 2006). Although Tian-Liang's fear is subjectively genuine, the record does not demonstrate that it is objectively reasonable. Tian-Liang argues that he fears persecution if he returns to China because he believes (1) he will be arrested for failing to report to family planning officials, and (2) he will be fined five or six times the amount of his original 3000 yuan fine. The record does not contain evidence that the authorities have issued a summons for his arrest or otherwise taken any action to pursue Tian-Liang for failing to report to family planning officials. As to the fine, although the threat of economic harm might, in some instances, amount to persecution, see Matter of T-Z, 24 I&N Dec. 163, 169 (BIA 2007), a fine does not constitute persecution per se, and Tian-Liang does not present evidence that a large fine will cause him to suffer any consequences that could amount to persecution. Viewing the evidence in the totality of the circumstances, Tian-Liang has not demonstrated an objectively reasonable basis for his fear of future persecution.

Accordingly, Tian-Liang has failed to establish eligibility for asylum.

7

Because he fails to meet the lower burden of proof required for asylum, he also fails to satisfy the higher standard required to qualify for withholding of removal. See <u>Yu</u>, 568 F.3d at 1334.

**PETITION DENIED.**