[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-16022
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 15, 2010
JOHN LEY
CLERK

Agency No. A098-889-540

JIAN QIN JIANG,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(June 15, 2010)

Before BARKETT, HULL and WILSON, Circuit Judges.

PER CURIAM:

Jian Qin Jiang, a citizen of the People's Republic of China appearing

through counsel, seeks review following entry of the Board of Immigration

Appeals's ("BIA") final order affirming the Immigration Judge's ("IJ") denial of his application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture ("CAT"). Jiang argues that the BIA erred in finding that: (1) he had not suffered past persecution, (2) he did not establish a well-founded fear of future persecution based on his practice of Falun Gong, and (3) Jiang was ineligible for withholding of removal and CAT relief. Upon review of the record, and consideration of the parties' briefs, we deny Jiang's petition.

## I.

When "the BIA issues its own opinion, we review only the decision of the BIA, except to the extent the BIA expressly adopts the IJ's decision." *Rodriguez Morales v. U.S. Att'y Gen.*, 488 F.3d 884, 890 (11th Cir. 2007) (per curiam). Here, the BIA reversed the IJ's adverse credibility determination pertaining to Jiang's practice of Falun Gong. However, it dismissed Jiang's appeal and agreed with the IJ's findings that: (1) Jiang failed to establish past persecution or a well-founded fear of persecution based on China's coercive population control program, and (2) Jiang failed to establish a well-founded fear of future persecution based on his practice of Falun Gong. Thus, we review the decisions of both the IJ and the BIA concerning those issues. *See Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009).

2

We review de novo conclusions of law by the IJ and the BIA, "but review findings of fact for substantial evidence to support them." *Id.* at 1350–51 (citation omitted). Under the substantial evidence test, we "view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Id.* at 1351 (citation and quotation omitted). Our review for substantial evidence is highly deferential. *Id.* "To reverse factual findings by the Board, we must find that the record not only supports reversal, but compels it." *Id.* (alteration omitted) (citation and quotation omitted).

## II.

Jiang argues that the BIA erred in finding that he had not suffered past persecution because he had not shown "other resistance" to China's coercive population control program. He also argues that the BIA erred in finding that the mistreatment Jiang suffered did not rise to the level of persecution. Finally, Jiang argues that the BIA erred in finding that he had not suffered past persecution because it failed to consider the cumulative effect of the economic persecution, the fact that he incurred a huge fine and wanted more children. These arguments are without merit.

The INA gives the Attorney General or the Secretary of Homeland Security discretion to grant asylum to any non-citizen who meets the definition of

"refugee." INA § 208(b)(1)(A), 8 U.S.C. § 1158(b)(1)(A). A refugee is defined as:

> any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of . . . religion . . . or political opinion.

INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A). The asylum applicant carries the burden of proving statutory refugee status, and thereby establishing asylum eligibility. *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001) (per curiam). The applicant must establish that one of the protected grounds "was or will be at least one central reason for persecuting the applicant." INA § 208(b)(1)(B)(i), 8 U.S.C. § 1158(b)(1)(B)(i).

"To establish asylum [eligibility] based on past persecution, the applicant must prove (1) that [he] was persecuted, and (2) that the persecution was on account of a protected ground." *Silva v. U.S. Att'y Gen.*, 448 F.3d 1229, 1236 (11th Cir. 2006); *see also* 8 C.F.R. § 208.13(b). We have held that "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and that mere harassment does not amount to persecution." *Sepulveda v. U.S. Att'y Gen*, 401 F.3d 1226, 1231 (11th Cir. 2005) (per curiam) (alterations omitted) (citation and quotation omitted).

4

"To establish eligibility for asylum based on a well-founded fear of future persecution, the applicant must prove (1) a subjectively genuine and objectively reasonable fear of persecution that is (2) on account of a protected ground." *Silva*, 448 F.3d at 1236 (internal citation and quotation omitted). A showing of past persecution creates a rebuttable presumption of a well-founded fear of future persecution. *Sepulveda*, 401 F.3d at 1231 (citation and quotation omitted). "An applicant may also establish a well-founded fear of persecution without proving past persecution. To do so, an applicant must establish a fear of persecution in his country of nationality on account of a protected ground, a reasonable possibility of suffering persecution if the applicant returns to that country, and that he is unable or unwilling to return because of his fear." *Kazemzadeh*, 577 F.3d at 1352 (internal citation and internal quotation marks omitted).

With respect to coercive family planning, section 101(a)(42)(B) of the INA provides asylum eligibility for the following persons:

> [A] person who has been forced to abort a pregnancy or to undergo involuntary sterilization, *or who has been persecuted for* failure or refusal to undergo such a procedure *or for other resistance to a coercive population control program*, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

8 U.S.C. § 1101(a)(42)(B) (emphasis added).

5

We recently decided to what extent this provision applies to spouses of those targeted by such policies:

> [Section 101(a)(42)(B)] does not confer automatic refugee status on an individual merely because his . . . spouse . . . underwent a forced abortion or sterilization. Rather, the person who did not physically undergo the forced procedure, or is not subject to a well-founded fear of one, *must establish actual persecution for resisting* a country's coercive family planning policy, or a well-founded fear of future persecution for doing so. In simple terms, persecution, or the fear thereof, *must be personally endured by the applicant*.

*Yu v. U.S. Att'y Gen.*, 568 F.3d 1328, 1332–33 (11th Cir. 2009) (per curiam) (internal citations and quotation omitted) (emphasis added). "Resistance" that could confer refugee status on a spouse includes "expressions of general opposition, attempts to interfere with enforcement of government policy in particular cases, and other overt forms of resistance to the requirements of the family law." *Id.* at 1334 (quotation omitted).

In *Yu*, the applicant claimed that the Chinese government persecuted him by forcing his wife to insert an IUD following the birth of their first child and by forcing her to abort a second pregnancy that occurred despite the IUD. *Id.* at 1329. We concluded that substantial evidence supported the BIA's finding that Yu failed to show that he personally suffered any past persecution or that he had a well-founded fear of future persecution. *Id.* at 1334. The only evidence of persecution Yu cited was his wife's forced abortion and sterilization and the fine.

6

Yu did not assert any "other resistance" claim, and we concluded that to the extent Yu's hiding from authorities constituted other resistance, he did not show that he was persecuted because of that resistance. In sum, "[t]he fact that authorities fined Yu and tried to arrest him, but never detained or physically harmed him, is insufficient to establish past persecution." *Id.* Moreover, we concluded that Yu's professed fear of future persecution (which stemmed solely from his wife's forced procedures and payment of the fine) was insufficient to establish a well-founded fear of persecution because he did not assert that if he returned to China, he would face persecution by being forced to undergo a sterilization himself or for otherwise resisting China's population control program. *Id.*

Substantial evidence supports the IJ's and BIA's conclusion that Jiang failed to establish past persecution or a well-founded fear of future persecution due to China's coercive population control program. Although Jiang testified that he tried to stop the authorities from taking his wife, he notably did not claim before the IJ or BIA that he was physically harmed, threatened, or punished for doing so. Nor did he present any evidence that the government fined him because he resisted his wife's sterilization or expressed general opposition to the family planning policies, attempted to interfere with enforcement of government policy in other cases, or otherwise overtly resisted the birth limitation laws.

7

Moreover, Jiang proffered no evidence that the amount of the fine, in relation to his financial circumstances, rose to the level of persecution. The fact that the authorities fined him was insufficient to establish past persecution. *See id.* Finally, we decline to consider Jiang's "cumulative effect of economic persecution" argument because he did not raise it before the BIA. Accordingly, we conclude that the IJ and BIA correctly determined that Jiang failed to establish that he suffered past persecution.

With regard to Jiang's future persecution claims, he did not establish a well-founded fear based on his resistance to the coercive policies. The record indicates that his professed fear appears to rest solely on his wife's sterilization and the fine. None of the evidence showed that, upon returning to China, he: (i) will be unable to pay the remainder of the fine, (ii) will be arrested and imprisoned or otherwise punished, or (iii) will face future persecution because of his past resistance or for acts of resistance he intends to make upon returning. Accordingly, we also conclude that the IJ and the BIA correctly determined that Jiang failed to establish a well-founded fear of future persecution based on China's enforcement of its population control program.

### III.

Jiang argues that the BIA erred in finding that he did not establish a well-founded fear of future persecution based on his practice of Falun Gong.

8

Although the BIA found that the Chinese government did not currently know about Jiang's practice of Falun Gong, he argues that it failed to address the fact that if he returns to China he will continue to practice and they will find out about it. Jiang asserts that based on his testimony and the background material, he has established a well-founded fear of persecution. We find these arguments unpersuasive.

In *Zheng v. U.S. Att'y Gen.*, we concluded that one's status as a Falun Gong practicioner does not require a finding of past persecution or a well-founded fear of persecution. 451 F.3d 1287, 1292 (11th Cir. 2006) (per curiam). In *Zheng*, Chinese government officials detained a Falun Gong follower for five days and forced him to watch anti-Falun Gong materials, stand in the sun for two hours, and sign a pledge not to practice Falun Gong. *Id.* at 1289. After his release, the individual was fired from his job, and because he could not secure other employment, he went to a rural village to live with his parents. Over a three-year period, local officials watched him and occasionally searched his parents' home for Falun Gong materials. *Id.*

We concluded that those circumstances did not rise to the level of persecution. Moreover, the petitioner in *Zheng* could not show a well-founded fear of future persecution because, according to the 2002 Country Report, the Chinese government generally released Falun Gong followers from detention and reserved the harshest punishments for core leaders. *Id.* at 1291–92. Because the petitioner

9

was not a core leader and he had lived with his parents for three years without harm or detention, we concluded that he failed to meet his burden of showing a reasonable possibility of future persecution upon his return to China. *Id.* at 1292.

Here, substantial evidence supports the IJ's and BIA's conclusion that Jiang failed to establish eligibility for asylum based on his practice of Falun Gong. Jiang did not claim that he had ever been persecuted or threatened on account of his practice of Falun Gong. He did not assert that he was a core leader or that the Chinese authorities were aware he had become a Falun Gong practitioner while living in the United States. Although Jiang testified that if he returned to China, the government would imprison and beat him, he offered no supporting evidence other than the background material, which indicated that, because of the government crackdown, public Falun Gong activity was negligible. Furthermore, he did not claim before the IJ or BIA that he intended to practice publicly or to avow openly his Falun Gong affiliation, or show that if the government learned of his Falun Gong beliefs, it would punish him more severely than it punished Zheng, who was unable to establish either past persecution or a well-founded fear of persecution. *See Zheng,* 451 F.3d at 1290, 1291–92. Accordingly, substantial evidence supported the finding that Jiang failed to show eligibility for a grant of asylum on the basis of his adherence to Falun Gong.

Finally, although Jiang mentions withholding of removal and CAT relief in the "burden of proof" section of his brief, he does not argue that he showed eligibility for withholding of removal or CAT relief. Jiang has therefore abandoned those claims. *See Kazemzadeh*, 577 F.3d at 1352. Accordingly, we deny Jiang's petition to the extent it challenges the BIA's determination that he failed to establish eligibility for withholding of removal or CAT relief.

**PETITION DENIED.**