[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-11585
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 20, 2011
JOHN LEY
CLERK

Agency No. A094-824-767


QI GENG CHEN,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(April 20, 2011)

Before TJOFLAT, CARNES and FAY, Circuit Judges.

PER CURIAM:

Qi Geng Chen, a native and citizen of the People's Republic of China, petitions for review of the Board of Immigration Appeals' ("BIA") decision affirming the Immigration Judge's ("IJ") final order of removal and denying his claims for asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"), 8 U.S.C. §§ 1158, 1231, 8 C.F.R. § 208.16(c). On appeal, Chen asserts that the BIA's order was not supported by substantial evidence. For the reasons stated below, we deny the petition for review.

I.

The Department of Homeland Security issued a Notice to Appear to Chen, alleging that he was a native and citizen of the People's Republic of China who entered the United States on an unknown date, at an unknown point of entry, without being inspected or paroled by an immigration officer. The Notice charged that Chen was removable under INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled. Chen admitted the allegations in the notice to appear and conceded removability. He requested asylum, withholding of removal, and CAT relief.

Chen's application was based on the following facts. After Chen's wife gave birth to the couple's first child, the Chinese authorities forced her to have an

2

intrauterine device ("IUD") inserted.  Because the couple wanted to have more children, they paid a private doctor to remove the IUD.  After Chen's wife became pregnant, she went to hide at a relative's house, but when she failed to appear for her next IUD checkup, someone told the local government officials where she was hiding.  The cadres took Chen's wife to the hospital and forced her to undergo an abortion.

Chen and his wife wanted to have more children, but they knew that the officials would force Chen's wife to have another abortion if she became pregnant again.  Even if the couple were able to have a second child, the officials would require Chen or his wife to be sterilized against their wishes.  Therefore, Chen and his wife decided to leave China and come to the United States.  Chen left the country first with the help of a smuggler.  He explained that his wife would come to the United States as well if his asylum application was successful.

After arriving in the United States, Chen began attending a Christian church and was baptized in November 2008.  Chen testified that there were two kinds of Christianity in China: the "patriotic church," which was recognized by the government, and family churches, which were illegal.  In the patriotic church, members were taught that they needed to listen to the government and to follow its laws, including the family planning policy.  Chen stated that he could not join the

patriotic church because he was opposed to its advocacy of abortion. Therefore, he would attend one of the family churches if he returned to China. Chen was concerned that the Chinese government would arrest him because of his religious beliefs. He also feared that he would be detained and tortured if he returned to China because he left the country illegally with the help of a smuggler.

The administrative record included the State Department's China Country Reports on Human Rights Practices for 2007, the State Department's International Religious Freedom Report for 2007 and the China Profile of Asylum Claims for 2007. These reports explained that the Chinese government required all religious groups to register with a government-affiliated religious organizations. Unregistered religious groups were targeted in government crackdowns. The authorities' treatment of unregistered house churches varied from region to region. In some locations, house churches with hundreds of members met openly, with the full knowledge of local authorities. In other places, house churches were strictly proscribed. Although some rank-and-file church members were arrested or detained, the harshest punishments were imposed on church leaders.

The IJ issued an oral decision denying Chen's application for asylum, withholding of removal, and CAT relief. First, the IJ observed that Chen was not *per se* entitled to asylum based on his wife's forced abortion, and that he had not

presented any evidence that he personally engaged in actions that could be construed as "other resistance" to China's birth control policy. Therefore, the IJ determined that Chen had not established past persecution. The IJ also determined that Chen had not established a well-founded fear of future persecution based on his Christian beliefs. The IJ observed that the treatment of underground churches in China varied from area to area. The IJ also noted that it was unclear what sort of sanctions Chen would face for practicing Christianity because he was just a parishioner, not a high-profile church leader. With respect to Chen's claim for CAT relief, the IJ concluded that the evidence in the record did not establish a clear probability that Chen would be tortured for leaving China illegally.

Chen appealed to the BIA, but the BIA dismissed his appeal. The BIA agreed with the IJ's conclusion that Chen was not *per se* eligible for asylum based on his wife's abortion. The BIA concluded that Chen had failed to show past persecution because he had not alleged that he was personally harmed or mistreated, or that his wife was purposefully targeted in order to punish him. The BIA also determined that Chen had not established a fear of future persecution based on China's birth control policy because he and his wife only had one child and, therefore, were not in violation of the policy. The BIA explained that Chen's desire to have children in the future was "too speculative" to support a claim for

asylum.

Regarding religious persecution, BIA noted that the treatment of Christians varied greatly in different areas of China, and that house churches were tolerated in some areas. Therefore, the BIA concluded that Chen's fear of future persecution based on his Christian beliefs was not objectively reasonable. The BIA also concluded that Chen had not established a well-founded fear of persecution based on his illegal departure from China. Accordingly, the BIA upheld the IJ's denial of Chen's applications for asylum and withholding of removal. The BIA also determined that Chen was not entitled to CAT relief because he had not shown that he would more likely than not be tortured if he were removed to China.

II.

In a case where the BIA issues its own opinion, we review the BIA's decision. *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). To the extent that the BIA adopts the IJ's reasoning, we review the IJ's decision as well. *Id.* Here, the BIA issued its own opinion but also adopted portions of the IJ's reasoning. Therefore, we are reviewing both decisions.

We review the BIA's factual findings to determine whether they are supported by substantial evidence. *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026-27 (11th Cir. 2004) (*en banc*). "We view the record evidence in the light most

6

favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Id.* at 1027. We may reverse the BIA's factual findings only when the record compels a reversal. *Id.*

An applicant for asylum must demonstrate that he is a refugee. INA § 208(b)(1), 8 U.S.C. § 1158(b)(1); 8 C.F.R. § 208.13(a). An applicant qualifies as a refugee if he suffered past persecution, or has a well-founded fear of future persecution, in his country of origin. 8 C.F.R. § 208.13(b); *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1351 (11th Cir. 2009). To establish past persecution, the applicant must show that he was persecuted in the past on account of his race, religion, nationality, membership in a particular social group, or political opinion. 8 C.F.R. § 208.13(b)(1); *Kazemzadeh*, 577 F.3d at 1351. In the absence of past persecution, an applicant may establish a well-founded fear of persecution by showing that there is a reasonable possibility that he will be persecuted if he is returned to his country of origin. 8 C.F.R. 208.13(b)(2); *Kazemzadeh*, 577 F.3d at 1352. The applicant must show that his fear of persecution is "subjectively genuine and objectively reasonable." *Al Najjar*, 257 F.3d at 1289.

By statute, Congress has provided that

> a person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been

7

persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

8 U.S.C. § 1101(a)(42)(B). In *Matter of J-S-*, 24 I & N Dec. 520 (A.G. 2008), the Attorney General determined that an individual whose spouse has been forced to undergo an abortion or involuntarily sterilization is not automatically entitled to refugee status under 8 U.S.C. § 1101(a)(42)(B). *Matter of J-S-*, 24 I & N Dec. at 523-24. We have upheld the Attorney General's interpretation of the statute. *Yu v. U.S. Att'y Gen.*, 568 F.3d 1328, 1332-33 (11th Cir. 2009). Thus, an applicant seeking to establish eligibility for asylum under 8 U.S.C. § 1101(a)(42)(B) must show that: (1) he or she personally underwent a forced abortion or involuntary sterilization; or (2) he or she was persecuted, or has a well-founded fear of future persecution, on account of other resistance to a population control program. *Id.* at 1333.

To qualify for withholding of removal, an applicant must establish that his life or freedom would be threatened in her country of origin on account of a statutorily protected ground. *See* INA § 241(b)(3)(A); 8 U.S.C. § 1231(b)(3)(A). The applicant must demonstrate that he would more likely than not be persecuted upon being returned to his country of origin. *Sepulveda v. U.S. Att'y Gen*, 401

8

F.3d 1226, 1232 (11th Cir. 2005).  An applicant who is unable to satisfy the standard for asylum generally will be unable to meet the more stringent standard for withholding of removal.  *Id.* at 1232-33.

In this case, substantial evidence supports the BIA's finding that Chen had not suffered past persecution in China.  Chen could not establish past persecution based solely on his wife's forced abortion.  *See Yu*, 568 F.3d at 1332-33.  In addition, Chen did not offer any evidence that he himself was persecuted on account of his resistance to China's coercive population control program.  Thus, Chen failed to establish past persecution.

Contrary to Chen's assertions, the BIA did consider his fear of future persecution, but determined that his fear was not objectively reasonable.  That finding is supported by substantial evidence because the record does not compel the conclusion that Chen will be persecuted if he is removed to China.  *See Adefemi*, 386 F.3d at 1027;  *Kazemzadeh*, 577 F.3d at 1352.  At the present time, Chen and his wife only have one child, and, therefore, they are not in violation of China's family planning policy.  It was reasonable for the BIA to determine that Chen's desire to have more children at some point in the future was too speculative to show that he would be persecuted in the future.

In addition, the record does not compel the conclusion that Chen will be

persecuted based on his Christian beliefs and his desire to worship in an underground church.  As the BIA noted, the State Department reports in the administrative record show that the treatment of house churches varies from region to region in China.  Even in areas where  house churches were actively targeted by the government, the most serious punishments were given to church leaders, not rank-and-file members such as Chen.

Although Chen asserts that the BIA gave too much weight to the State Department's reports, he did not submit any contrary evidence demonstrating that Christians are persecuted in all regions of China. Therefore, it was appropriate for the BIA to rely on the State Department's description of country conditions in China.  Because Chen failed to demonstrate past persecution or a well-founded fear of future persecution, the BIA properly denied his application for asylum.  *See Kazemzadeh*, 577 F.3d at 1351-52.  As Chen did not meet the standard for asylum, he likewise failed to meet the higher standard for withholding of removal.  *See Sepulveda*, 401 F.3d at 1232-33.

Finally, although Chen's counseled brief makes a conclusory assertion that no reasonable fact-finder could have found that he would not be tortured if removed to China, he does not support that assertion with any analysis or any cites to legal authority.  Therefore, Chen has abandoned his claim for CAT relief.  *See*

*id.* at 1228 n.2 (noting that issues not raised on appeal are deemed abandoned); *Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (explaining that a mere passing reference to an issue, without further elaboration or argument, is insufficient to raise an issue on appeal). Accordingly, after review of the administrative record and consideration of the parties' briefs, we deny the petition for review.

**PETITION DENIED.**