[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-10978
Non-Argument Calendar
_____

Agency No. A073-057-039

XING HUI DONG,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(October 22, 2013)

Before CARNES, Chief Judge, HULL and JORDAN, Circuit Judges.

PER CURIAM:

Xing Hui Dong, a Chinese national, seeks review of an order of the Board of Immigration Appeals affirming an Immigration Judge's denial of his application for political asylum and withholding of removal under 8 U.S.C. § 1158(b)(1) and 8 U.S.C. § 1231(b)(3)(A).  On appeal, Dong argues that the BIA erred in finding that he did not show that he suffered past persecution or had a well-founded fear of future persecution.

## I.

Xing Hui Dong fled to the United States after he and his wife violated China's one-child birth control policy.  The couple had their first child in 1982 and a second child in 1984.  In 1985 Chinese family planning officials learned that Dong's wife was pregnant with a third child.  They forced Dong's wife to abort the pregnancy and undergo sterilization.  The officials also fined Dong and his wife 2,000 renminbi (RMB), or about $693, although Dong and his wife only earned 80 to 90 RMB per month.

Dong did not pay the fine, and family planning officials repeatedly came to his home demanding payment.  During one visit the officials struck Dong while confiscating his television.  He decided to flee China in 1989 and was admitted to the United States that same year after paying smugglers $20,000 to bring him here.  His wife remained in China.  Since he fled, officials have increased his fine twice.

2

In 1995 it was changed to 30,000 RMB (about $3,625) and in 2010 it was raised to 150,000 RMB (about $22,000). The authorities still visit Dong's wife on occasion to try to collect the fine.

While in the United States, Dong has worked as a cook and held various part-time jobs. The most he was ever able to earn in a single year was $20,000, but his annual income has dropped to about $7,000 in recent years. He claims that he works less frequently now because of his declining health. Dong has also acquired several assets over the years. He purchased a duplex in 2001 for $40,000 in cash, which he owns free of any liens. The duplex has an appraised value of about $71,000. He also owns a 1998 Lexus that he estimates is worth about $2,000.

In Dong's removal proceedings, the IJ initially granted him asylum on the basis that he had a well-founded fear of future persecution. The IJ relied on the fact that Chinese officials had attempted to collect the fine many times over the years and had increased the fine "in a very unreasonable manner." The Department of Homeland Security appealed the IJ's decision. The BIA reviewed the IJ's decision and determined that Dong had failed to establish past persecution; however, it remanded the proceedings for further factfindings regarding Dong's current financial circumstances to determine whether the increased fine would qualify as a severe economic disadvantage. On remand, the IJ determined that the

3

fine would not cause a severe economic disadvantage and that Dong had thus not established a well-founded fear of future persecution. Accordingly, the IJ denied Dong's asylum request. The BIA upheld that decision, and Dong now petitions this court for review.

## II.

"Where the BIA issues a decision, we review that decision, except to the extent that it expressly adopts the IJ's opinion." Chen v. U.S. Att'y Gen., 463 F.3d 1228, 1230 (11th Cir. 2006). "Insofar as the BIA adopts the IJ's reasoning, we review the IJ's decision as well." Id. We review factual findings under a "highly deferential" substantial evidence test, whereby we "must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar v. Ashcroft, 257 F.3d 1262, 1283–84 (11th Cir. 2001) (quotation marks omitted). We will reverse the BIA only if we find that the record compels reversal. See Fahim v. U.S. Att'y Gen., 278 F.3d 1216, 1218 (11th Cir. 2002).

To establish eligibility for asylum, an applicant "must, with specific and credible evidence, establish (1) past persecution on account of race, religion, nationality, membership in a particular social group, or political opinion; or (2) a well-founded fear of future persecution on account of a statutorily-protected

4

ground." Chen, 463 F.3d at 1231.[1] Demonstrating past persecution creates a "rebuttable presumption" of a well-founded fear of future persecution, but without this showing a petitioner "must demonstrate a well-founded fear of future persecution that is both subjectively genuine and objectively reasonable." Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1257 (11th Cir. 2006).

Persecution is "an extreme concept requiring more than a few isolated incidents of verbal harassment or intimidation." Ruiz v. Gonzales, 479 F.3d 762, 766 (11th Cir. 2007) (quotation marks omitted). It may be shown from significant physical abuse, see id., but "[m]inor physical abuse and brief detentions do not amount to persecution." Kazemzadeh v. U.S. Att'y Gen., 577 F.3d 1341, 1353 (11th Cir. 2009). Persecution is not limited to severe physical mistreatment; it also includes severe economic sanctions. See In re T-Z-, 24 I. & N. Dec. 163 (BIA 2007). For example, fines may amount to persecution if they cause a "severe economic disadvantage" considering an alien's net worth, other sources of income, and the conditions of the local economy. See id. at 173–74 (quotation marks

---

[1] Forced abortion, sterilization, and punishment for resisting a forced population control program qualify as persecution on account of political opinion under the Immigration and Nationality Act. See 8 U.S.C. § 1101(a)(42)(B). A husband is not automatically entitled to refugee status because his wife was subjected to a forced abortion or sterilization. See Yu v. U.S. Att'y Gen., 568 F.3d 1328, 1332 (11th Cir. 2009) (per curiam). Instead, that husband must show that he personally was persecuted, either by undergoing involuntary sterilization himself or by resisting the coercive family planning policy. See id. at 1333.

omitted).  To satisfy that severe economic disadvantage standard, a fine should reduce an alien "to an impoverished existence." Id. at 174.  However, an alien does not need to demonstrate that the fine would cause "a total deprivation of livelihood or a total withdrawal of all economic opportunity in order to demonstrate harm amounting to persecution." Id. at 173.

We conclude that substantial evidence supports the BIA's determination that Dong did not show past persecution or a well-founded fear of future persecution.[2] Although Dong was struck by Chinese officials when they confiscated his television, such "[m]inor physical abuse . . . do[es] not amount to persecution." See Kazemzadeh, 577 F.3d at 1353.  Substantial evidence also supports the conclusion that Dong's fine does not amount to economic persecution considering (1) he secured $20,000 to pay a smuggler to take him to the United States (when the amount of his fine was under $700), (2) he currently owns a duplex, which is free of liens and valued at $71,000, that he purchased in 2001 for $40,000 in cash, (3) he owns a used Lexus automobile that he values at $2,000, and (4) he has earned an annual income of $7,000 in recent years.  Although we note that the increase in Dong's fine is substantial, his financial assets still support the

---

[2] Dong argues that the IJ committed reversible error by not reevaluating his past persecution claim on remand.  We do not agree.  The additional evidence that Dong presented to the IJ on remand was not sufficient to compel a finding of past persecution.

determination that the larger fine would not reduce him to "an impoverished existence."    Accordingly, we cannot say that the record compels reversal.  <u>See</u> <u>Fahim</u>, 278 F.3d at 1218.

**PETITION DENIED.**

7