[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-15885
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 29, 2010
JOHN LEY
CLERK

Agency No. A078-229-163

WEN GUANG PAN,

                                                        Petitioner,

                        versus

U.S. ATTORNEY GENERAL,

                                                        Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(June 29, 2010)

Before BLACK, MARTIN and FAY, Circuit Judges.

PER CURIAM:

Wen Guang Pan, a native and citizen of China, has filed a petition for review from the Board of Immigration Appeals's ("BIA") decision affirming the Immigration Judge's ("IJ") order denying his claims for asylum and withholding of removal under the Immigration and Nationality Act, 8 U.S.C. §§ 1158, 1231 ("INA"). Pan argues that the BIA erred in denying his claims for asylum and withholding of removal because he established that he experienced past persecution due to his opposition to China's coercive population-control policy. Specifically, Pan contends that the 12,000 yuan fine that family planning officials levied against him and his wife constituted a severe economic deprivation that rose to the level of persecution.

Pan also argues that the BIA erred in finding that he did not demonstrate a well-founded fear of future persecution, because he showed that he had a well-founded fear of future persecution due to his practice of Falun Gong. Pan contends that his testimony regarding his practice of Falun Gong, coupled with the background information that he submitted detailing the Chinese government's persecution of Falun Gong practitioners, demonstrated that he has a well-founded fear of future persecution.

For the reasons set forth below, we deny Pan's petition.

**I.**

Pan entered the United States on or about July 20, 1999, without being admitted or paroled after inspection by an immigration officer. On June 19, 2000, Pan filed an application for asylum and withholding of removal based on the forcible sterilization and forcible abortion suffered by his wife in China. In April 2001, the former Immigration and Naturalization Service (now the Department of Homeland Security, or "DHS"), served Pan with a notice to appear ("NTA"), charging him with removability under INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled. At a hearing before an IJ in May 2001, Pan, through his attorney, conceded removability. The IJ denied Pan's application in December 2001. Pan appealed to the BIA from the IJ's decision and, in 2003, the BIA remanded the case.

After the BIA remanded Pan's case, the parties appeared before the IJ on numerous occasions and, each time, the matter was continued. On July 17, 2008, Pan appeared before a different IJ, and filed an updated application for asylum and withholding of removal. In his updated asylum application, Pan asserted that he had been persecuted on account of his political opinion—namely, his opposition to China's family planning policy. Pan explained that his wife, You Jin Chen, lived in China with their two children. Pursuant to China's population-control policy, family planning officials in China had forcibly inserted an intrauterine device

3

("IUD") into Chen, and, in 1999, had forced her to have an abortion. In addition, family planning officials had levied a 12,000 yuan fine against Pan and Chen after the birth of their second child. Shortly after Chen's forcible abortion, family planning officials met with Pan, and told him that he would be forcibly sterilized if he and Chen had another child. Pan promised the officials that he and Chen would not have any more children. Pan left China later that same year.

Pan supported his asylum application with an affidavit. In this affidavit, Pan averred that, in August 2008, he began practicing Falun Gong[1] in order to improve his health. Pan feared that, if he were to return to China, the Chinese government would detain, beat, and interrogate him due to his practice of Falun Gong.

The record included a 2007 report by the U.S. State Department, which addressed religious freedom in China, stated that the Chinese government repressed, and officially had banned, the practice of Falun Gong, and that Falun Gong practitioners faced arrest, detention, imprisonment, and re-education in labor camps. Membership in the Falun Gong movement was considered to be illegal. There were credible reports that some Falun Gong practitioners were tortured, and that some died while in detention. The record also included several news articles,

---

[1] The 2007 U.S. State Department report on religious freedom in China explained that "Falun Gong is a self-described spiritual movement that blends aspects of Taoism, Buddhism, and the meditation techniques and physical exercises of qigong (a traditional Chinese exercise discipline) with the teachings of Falun Gong leader Li Hongzhi."

4

which Pan had submitted in support of his application.  These articles reported that several Chinese citizens had been detained or faced imprisonment due to their practice of Falun Gong.

The record also contained the U.S. State Department's 2005 Country Report on Human Rights Practices in China ("country report").  The country report stated the following:

> Since the government banned the Falun Gong in 1999, the mere belief in the discipline (even without any public manifestation of its tenets) has been sufficient grounds for practitioners to receive punishments ranging from loss of employment to imprisonment.  Although the vast majority of practitioners detained have been released, many were detained again after release . . . and thousands reportedly remained in reeducation-through-labor camps.  Those identified by the government as "core leaders" were singled out for particularly harsh treatment.

In December 2008, Pan, represented by an attorney, appeared at a hearing before the IJ.  At the hearing, Pan testified consistently with his application regarding Chen's forcible sterilization and abortion, as well as the fine levied against him and Chen by family planning officials.  Pan further testified that, if he were to return to China, he would continue to practice Falun Gong.  On cross-examination, Pan conceded that no one in China was aware that he practiced Falun Gong.

5

The IJ denied relief, finding that Pan's testimony concerning his practice of Falun Gong was not credible for a number of reasons. Pan appealed to the BIA from the IJ's decision.

The BIA dismissed Pan's appeal. In its decision, the BIA explained that it declined to affirm the IJ's adverse credibility determination. Nevertheless, the BIA determined that Pan had not demonstrated that he had a reasonable fear of future persecution, because he had conceded that no one in China was aware that he practiced Falun Gong. In addition, the BIA determined that Pan had failed to show that he suffered past persecution, because he did not establish that he and Chen had been fined due to his manifesting opposition to China's family planning policy. The BIA also found that the amount of the fine was not so onerous as to constitute economic persecution. Accordingly, the BIA concluded that Pan had failed to show that he was eligible for asylum, and thus necessarily had failed to show that he was eligible for withholding of removal.

## II.

"We review only the BIA's decision, except to the extent the BIA expressly adopted the IJ's reasoning." *Yu v. U.S. Att'y Gen.*, 568 F.3d 1328, 1330 (11th Cir. 2009). Here, because the BIA issued its own opinion, and did not adopt the IJ's opinion, we review only the BIA's opinion. *Id.* We review "all legal issues *de novo*." *Zheng v. U.S. Att'y Gen.*, 451 F.3d 1287, 1289 (11th Cir. 2006). We

6

review factual determinations under the substantial-evidence test, under which we must affirm if the BIA's determination is "supported by reasonable, substantial, and probative evidence on the record considered a whole." *Id.* "Under this highly deferential standard of review, the [BIA's] decision can be reversed only if the evidence compels a reasonable fact finder to find otherwise." *Id.* at 1289-90 (quotation omitted).

In addition, the BIA's determination as to a petitioner's credibility is conclusive, unless the record compels a contrary determination. *Yang v. U.S. Att'y Gen.*, 418 F.3d 1198, 1201 (11th Cir. 2005). Where the BIA does not make a clear credibility determination, we will accept that the petitioner's testimony was credible. *Mejia v. U.S. Att'y Gen.*, 498 F.3d 1253, 1257 (11th Cir. 2007). Here, the BIA declined to affirm the IJ's adverse credibility finding, but did not make its own determination as to Pan's credibility. Accordingly, we will treat Pan's testimony as credible. *See id.*

### III.

An alien who arrives in or is present in the United States may apply for asylum. INA § 208(a)(1), 8 U.S.C. § 1158(a)(1). The Attorney General or the Secretary of the DHS has discretion to grant asylum if the alien meets the INA's definition of a "refugee." INA § 208(b)(1), 8 U.S.C. § 1158(b)(1). A "refugee" is:

any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A). The asylum applicant carries the burden of proving statutory "refugee" status. *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001).

To establish asylum eligibility, the alien must, with specific and credible evidence, establish (1) past persecution on account of a statutorily listed factor, or (2) a "well-founded fear" that the statutorily listed factor will cause future persecution. 8 C.F.R. § 208.13(a), (b); *Rodriguez-Morales v. U.S. Att'y Gen.*, 488 F.3d 884, 890 (11th Cir. 2007). An alien must demonstrate a nexus between past or future persecution and a protected activity by showing that the protected ground, "at least in part," motivated or would motivate her persecution. *Rodriguez-Morales*, 488 F.3d at 890 (holding that an alien must demonstrate a nexus between her persecution and a protected ground); *Tan v. U.S. Att'y Gen.*, 446 F.3d 1369, 1375 (11th Cir. 2006) (holding that the alien's persecution must, at least in part, be based on a protected ground).

The INA recognizes forced abortions and sterilizations as one kind of persecution that is accorded protection under the Act. *See* 8 U.S.C. § 1101(a)(42)(B); *Zhang v. U.S. Att'y Gen.*, 572 F.3d 1316, 1319-20 (11th Cir. 2009). Specifically, the INA provides that:

> a person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

8 U.S.C. § 1101(a)(42)(B). "The term 'resistance' may include expressions of general opposition, attempts to interfere with enforcement of government policy in particular cases, and other overt forms of resistance to the requirements of the family law." *Yu*, 568 F.3d at 1334 (quotation omitted).

We have deferred to the Attorney General's decision in *Matter of J-S-*, 24 I&N Dec. 520 (AG 2008), in which the Attorney General concluded that the spouse of an individual who has undergone involuntary sterilization, or a forced abortion, is not automatically entitled to refugee status on that basis. *Yu*, 568 F.3d at 1331-33. "Rather, the person who did not physically undergo the forced procedure, or is not subject to a well-founded fear of one, must establish actual persecution for resisting a country's coercive family planning policy, or a

9

well-founded fear of future persecution for doing so." *Id.* at 1333 (quotation omitted). "In simple terms, persecution, or the fear thereof, must be personally endured by the applicant." *Id.* Thus, in *Yu*, we held that the fact that the Chinese government had sterilized the petitioner's wife, forced her to undergo an abortion, and had required the couple to pay a fine due to their violation of the family planning policy, was insufficient to show that the petitioner personally had suffered past persecution due to his overt resistance to a coercive population-control program. *Id.* at 1334-35.

When a petitioner fails to "establish a claim of asylum on the merits, he necessarily fails to establish eligibility for withholding of removal." *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1288 n.4 (11th Cir. 2005).

Here, regardless of whether the 12,000 yuan fine levied against Pan and Chen was onerous, Pan did not show that this fine was imposed due to his personal, overt opposition of China's family planning policy. Pan showed that his wife forcibly was sterilized and was forced to have an abortion, and that the Chinese government levied a fine against the couple for their violation of the family planning policy. He failed to show, however, that he personally manifested opposition to the family planning policy. Under *Yu*, this evidence, standing alone, is insufficient to demonstrate past persecution. Pan does not point to any evidence indicating that he expressed his disagreement with China's family planning policy,

10

or that he attempted to interfere with the policy. Moreover, Pan conceded that he and Chen paid the fine levied against them in full, and that he promised family planning officials that he and Chen would not have additional children. As a result, there was evidence showing that Pan did not manifest resistance to China's family planning policy. For these reasons, substantial evidence supports the BIA's finding that Pan did not demonstrate past persecution based on his opposition to China's family planning policy, and substantial evidence also supports the BIA's finding that Pan was not eligible for asylum and withholding of removal on this basis.

**IV.**

As noted above, a petitioner may demonstrate his eligibility for asylum by showing that he has a "well-founded fear" that a statutorily listed factor will cause future persecution. 8 C.F.R. § 208.13(a), (b); *Al Najjar*, 257 F.3d at 1287. Specifically, the petitioner must show that there "is a reasonable possibility that he will suffer persecution if removed to his native country," and that he is "unwilling to return to his native country because he fears persecution." *Zheng*, 451 F.3d at 1291; 8 C.F.R. § 208.13(b)(2)(i).

"Involvement with Falun Gong in China by itself does not entitle a person to asylum in the United States." *Zheng*, 451 F.3d at 1292. In *Zheng*, we reasoned that the petitioner had failed to demonstrate a well-founded fear of future

11

persecution because: (1) he had conceded that he was not a Falun Gong leader; and (2) the U.S. State Department's 2002 Country Report on Human Rights Practices in China showed that, although the Chinese government had continued a "harsh and comprehensive campaign against Falun Gong," Falun Gong adherents generally were released from detention, and the harshest punishments were reserved for the movement's "core leaders." *Id.* at 1291-92.

Substantial evidence supports the BIA's determination that Pan did not demonstrate a well-founded fear of future persecution due to his practice of Falun Gong. Accepting Pan's testimony as credible, he showed only that he began practicing Falun Gong in August 2008, after he arrived in the United States. He conceded that no one in China was aware that he practiced Falun Gong. Because Pan began practicing Falun Gong only four months before the final merits hearing in this case, and no one in China was aware that Pan practiced Falun Gong, the record supports an inference that Pan was not a leader in the Falun Gong movement. Accordingly, like the petitioner in *Zheng*, Pan has shown only that he practices Falun Gong.

Moreover, while the record in this case shows that Falun Gong practitioners in China face detention, imprisonment, beatings, and, in some cases, torture, the record also shows that most Falun Gong practitioners are released from detention, and that the harshest punishment is reserved for Falun Gong leaders. For this

12

reason, as well as the fact that Pan conceded that no one in China was aware that he practiced Falun Gong, this case is not materially distinguishable from our decision in *Zheng*. As a result, substantial evidence supports the BIA's determination that Pan failed to demonstrate his eligibility for asylum and withholding of removal on this basis.

**PETITION DENIED.**