[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-13810
Non-Argument Calendar

_____

Agency No. A098-900-328

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 6, 2011
JOHN LEY
CLERK

YI SONG JIANG,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(May 6, 2011)

Before TJOFLAT, CARNES and BLACK, Circuit Judges.

PER CURIAM:

Yi Song Jiang, a native and citizen of China, seeks review of the Board of Immigration Appeals' (BIA's) order affirming the Immigration Judge's (IJ's) denial of asylum, 8 U.S.C. § 1158(a), and termination of a previous grant of withholding of removal, 8 U.S.C. § 1231(b)(3). Jiang asserts three issues on appeal, which we address in turn. After review, we deny Jiang's petition.

## I. BACKGROUND

Jiang filed an application for asylum and withholding of removal based on his political opinion on March 14, 2005. On May 1, 2006, an IJ in New York found that Jiang had not established that he applied for asylum within one year of entering the United States, and pretermitted his application for asylum. However, because Jiang established that his wife was forcibly sterilized, the New York IJ concluded he was entitled to withholding of removal under *In re C-Y-Z-*, 21 I.&N. Dec. 915 (BIA 1997).

Jiang appealed to the BIA the New York IJ's adverse-credibility finding, as well as the IJ's alleged failure to consider all of the evidence or to give him an opportunity to explain any inconsistencies. The BIA remanded to the Immigration Court for a new hearing before a different IJ "solely for a determination of [Jiang's] eligibility for . . . asylum." An IJ granted Jiang's motion for a change of

venue, and transferred his removal proceedings to the Immigration Court in Orlando, Florida.

At the beginning of the removal proceedings in Orlando on April 29, 2009, the IJ stated "[s]o we all agree that the respondent already has been granted withholding, so now the only issue is can he increase that to asylum." The IJ rendered an oral decision denying Jiang's application for asylum. The IJ found that Jiang was not credible based on inconsistencies between his 2006 testimony in New York and the testimony adduced in the April 29, 2009, proceeding. The IJ further explained that, even if Jiang were credible, he would deny the application because Jiang did not establish his eligibility for asylum. Although the IJ denied Jiang's application for asylum, he refused to disturb the New York IJ's grant of withholding of removal because the BIA's remand order directed him only to determine whether Jiang was eligible for asylum.

The Government appealed the IJ's refusal to terminate the New York IJ's grant of withholding of removal. The Government asserted that when the New York IJ decided Jiang's application in 2006, the BIA interpreted the INA as providing *per se* refugee status to the spouse of a person who had been forcibly sterilized. Subsequently, in 2008, the Attorney General overruled the BIA's interpretation and established that the spouse of a person who had been forcibly

3

sterilized was not automatically eligible for refugee status. The Government asserted that Jiang's new and inconsistent testimony "reopened" his case, giving the IJ authority to reconsider the previous grant of withholding of removal.

In his response, Jiang stated he was appealing the IJ's denial of his application for asylum, and that the IJ's adverse-credibility finding was clearly erroneous. He further asserted that substantial evidence did not support the IJ's finding that he had not established past persecution or a well-founded fear of future persecution. Finally, Jiang contended the BIA had qualified and limited its remand to the IJ solely to the issue of his eligibility for asylum.

The BIA dismissed Jiang's appeal, sustained the Government's appeal, terminated Jiang's grant of withholding of removal, and ordered him removed. The BIA concluded the IJ's adverse credibility finding was not clearly erroneous because the finding was based on discrepancies between his 2009 and 2006 testimony. Further, even if Jiang's testimony was credible, to the extent that his asylum claim was based on the forced sterilization of his wife, such a claim was foreclosed by the Attorney General's decision in *Matter of J-S-*, 24 I.&N. Dec. 520 (A.G. 2008). The BIA then concluded the New York IJ's grant of withholding of removal was not a final disposition of Jiang's case because he was never ordered removed. Because *Matter of J-S-* provided its holding was to be applied to all

4

non-final cases, the BIA was obliged to apply *Matter of J-S-* and to vacate Jiang's grant of withholding of removal.

## II.  DISCUSSION

*A.  Adverse credibility determination*

Jiang first contends the BIA's adverse-credibility finding[1] was clearly erroneous.  "We review administrative fact findings, including credibility determinations, under the highly deferential substantial evidence test."  *Todorovic v. U.S. Att'y Gen.*, 621 F.3d 1318, 1323 (11th Cir. 2010) (quotations omitted).  Accordingly, "we view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision."  *Id.* at 1324 (quotations omitted).  We, therefore, "will reverse the agency's findings only if the evidence compels a reasonable fact finder to find otherwise."  *Id.* (quotations omitted).

The REAL ID Act of 2005 provides that an adverse-credibility determination may be based on inconsistencies that do not go "to the heart of the applicant's claim."  8 U.S.C. § 1158(b)(1)(B)(iii).  Because Jiang's application was filed before these amendments became effective on May 11, 2005, they do not

---

[1]  Where, as here, the BIA issues its own opinion, we review only that opinion, except to the extent the BIA expressly adopts the IJ's reasoning.  *Todorovic v. U.S. Att'y Gen.*, 621 F.3d 1318, 1323 (11th Cir. 2010).

apply to his claims. *See Shkambi v. U.S. Att'y Gen.*, 584 F.3d 1041, 1049 n.7 (11th Cir. 2009).

As in *Shkambi*, we need not resolve "whether adverse credibility determinations in pre-REAL ID Act cases must be based on inconsistencies that go to the heart of the claim because the inconsistencies identified by the IJ and the BIA in this case relate directly to [Jiang's] claims of persecution." *Id.* Inconsistencies between Jiang's 2006 account of how and when he arranged to leave China and his 2009 version of those events relate directly to his claim of past persecution and a well-founded fear of future persecution. Jiang's most recent claims of persecution are premised on his fear that a loanshark will report him to the Chinese government, and that he will be arrested, imprisoned, beaten, and fined as a consequences of the loanshark's actions. In his earlier testimony, however, Jiang explicitly denied procuring funds from a loanshark to finance his hasty departure. Thus, the issue of whether Jiang actually owes money to a loanshark relates directly to his claim of a well-founded fear of persecution.

Substantial evidence supports the BIA's adverse-credibility determination. Contrary to Jiang's contention, his 2009 testimony–that he traveled from Mexico to California by boat, that his neighbor helped him locate a "snakehead," and that he boarded a boat for Mexico the same day that the snakehead contacted

6

him–flatly contradicted and undermined his 2006 testimony–that he ventured into California in the trunk of a car, that he found a snakehead through his aunt, and that he left China eight days after contacting the snakehead. Substantial evidence in the form of numerous and blatant omissions and inconsistencies between Jiang's 2006 and 2009 testimony supported the BIA's credibility determination.

*B. Past Persecution or Well-Founded Fear of Future Persecution*

Jiang next contends he demonstrated past persecution because the Chinese government fined him for violating its family-planning law. He further asserts he established a well-founded fear of future persecution based on his fear of being fined, imprisoned, and beaten should he return to China.[2]

We review the BIA's conclusions of law *de novo* while reviewing findings of fact for substantial evidence. *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009). The government has the discretion to grant asylum to any alien meeting the definition of a "refugee" contained in the INA. *See id.* at 1351. The statute defines a refugee as:

> any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in

---

[2] Jiang also states in two places, without elaboration, that he established "other resistance" to China's family-planning policy. Because "[p]assing reference to issues are insufficient to raise a claim for appeal," *Lapaix v. U.S. Att'y Gen.*, 605 F.3d 1138, 1145 (11th Cir. 2010), Jiang has not properly raised his "other resistance" claim on appeal.

which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A). The burden of proof is on the applicant to establish his status as a refugee. *Kazemzadeh*, 577 F.3d at 1351. "To establish asylum based on past persecution, the applicant must prove (1) that he was persecuted, and (2) that the persecution was on account of a protected ground." *Id.* (alteration omitted). The potential for prosecution and punishment in the form of, *inter alia*, heavy fines, torture, and imprisonment for leaving a country illegally is not a statutorily protected ground entitling an alien to asylum. *Lin v. U.S. Att'y Gen.*, 555 F.3d 1310, 1316-17 (11th Cir. 2009).

We have concluded that persecution "is an extreme concept," *Silva v. U.S. Att'y Gen.*, 448 F.3d 1229, 1237 (11th Cir. 2006), and the fact government officials have fined an applicant and attempted to arrest him is insufficient to establish persecution. *Yu v. U.S. Att'y Gen.*, 568 F.3d 1328, 1334 (11th Cir. 2009). The BIA also has concluded that economic hardship must be extreme in order to amount to persecution, and, thus, "[g]overnment sanctions that reduce an applicant to an impoverished existence may amount to persecution." *In re T-Z*, 24

8

I.&N. Dec. 163, 174 (BIA 2007); *cf. Barreto-Clara v. U.S. Att'y Gen.*, 275 F.3d 1334, 1340 (11th Cir. 2001) (providing "employment discrimination which stops short of depriving an individual of a means of earning a living does not constitute persecution").

To establish a well-founded fear of future persecution an applicant must establish "a fear of persecution in his country of nationality on account of a protected ground, a 'reasonable possibility' of suffering persecution if he returns to that country, and that he is unable or unwilling to return because of his fear." *Kazemzadeh*, 577 F.3d at 1352 (citing 8 C.F.R. § 208.13(b)(2)(i)). We have rejected an applicant's claim that his wife's abortion and sterilization and his payment of a fine established a well-founded fear of future persecution. *Yu*, 568 F.3d at 1334.

As discussed above, substantial evidence supports the BIA's adverse-credibility determination. Nevertheless, even if the BIA had found Jiang's testimony to be credible, Jiang still would have failed to establish his eligibility for asylum or withholding of removal. To the extent Jiang's claim is premised on the fact that he paid a fine in the past, he has failed to establish eligibility for asylum because being fined is insufficient to establish persecution.

9

Further, we have previously rejected the argument that an applicant's wife's sterilization and his payment of a fine establish a well-founded fear of future persecution. Jiang also has failed to demonstrate that any future fine would reduce him to an impoverished existence because the record is devoid of evidence of his financial situation. Accordingly, Jiang has failed to establish past persecution or a well-founded fear of future persecution. Having failed to demonstrate eligibility for asylum, it follows that Jiang also was ineligible for withholding of removal.[3]

C. *Termination of Withholding of Removal*

Finally, Jiang contends the BIA erred in terminating his grant of withholding of removal. He maintains the parties stipulated before the second IJ that the first IJ's grant of withholding of removal was not to be disturbed on remand. He also asserts the BIA mistakenly believed that the change in the law wrought by *Matter of J-S-* occurred subsequent to the hearing before the second IJ. Jiang summarily concludes that it was fundamentally unfair for the BIA to overturn its prior decision, in which it instructed the second IJ to consider only the asylum issue.

---

[3] To qualify for withholding of removal under the INA, an applicant must show that, if returned to his country, it is more likely than not that his life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1231(b)(3). "Where an applicant is unable to meet the well-founded fear standard of asylum, he is generally precluded from qualifying for either asylum or withholding of removal." *Kazemzadeh*, 577 F.3d at 1352 (quotation and alteration omitted).

The INA provides that,

> [f]or purposes of determinations under this chapter, a person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

8 U.S.C. § 1101(a)(42)(B). The BIA originally interpreted this provision as providing an applicant "eligibility for asylum by virtue of his wife's forced sterilization." *In re C-Y-Z-*, 21 I.&N. Dec. at 918, *overruled by Matter of J-S-*, 24 I.&N. Dec. at 521. However, as we explained in *Yu*, "[i]n 2008, the Attorney General overruled the BIA's interpretation of § 1101(a)(42)(B) in *C-Y-Z-* . . . to the extent th[at] case[] established automatic spousal eligibility." *Yu*, 568 F.3d at 1331. We agreed "that § 1101(a)(42)(B) does not confer automatic refugee status on an individual merely because his or her spouse (or unmarried partner) underwent . . . sterilization." *Id.* at 1332. Accordingly, we held that "persecution, or the fear thereof, must be personally endured by the applicant." *Id.* at 1333.

In *Yu*, we further held the Attorney General's interpretation of § 1101(a)(42)(B) did not change the law, but rather explained "what the law had

11

always meant" because it simply "clarified the correct interpretation of the law." *Id.* (quotation and emphasis omitted). Thus, application of the Attorney General's decision to an open case pending on direct review was not an impermissible retroactive application of a new law. *Id.*

First, contrary to Jiang's argument, the BIA accurately stated that *Matter of J-S-* was decided after the first IJ issued his order. Next, to the extent Jiang relies on an alleged stipulation regarding the grant of withholding of removal, Jiang appeals to misconstrue the record. Further, Jiang fails to argue the BIA erroneously interpreted the law when it concluded the New York IJ's grant of withholding of removal was not a final order in his case and that *Matter of J-S-* was therefore fully applicable to his case. Instead, Jiang concludes his argument with a perfunctory statement the BIA's termination of his grant of withholding of removal was unfair. Jiang's unelaborated contention is devoid of citations to statutory or case law, the Due Process Clause or due process jurisprudence, or to the record. It is therefore insufficient to raise a due process challenge to the BIA's action. *See Lapaix*, 605 F.3d at 1145.

## III. CONCLUSION

Substantial evidence supports the BIA's adverse-credibility finding. Substantial evidence also supports that Jiang did not demonstrate past persecution

12

or a well-founded fear of future persecution.  Further, the BIA did not err in terminating Jiang's grant of withholding of removal.  Thus, we deny Jiang's petition.

**PETITION DENIED.**