[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-14459
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 14, 2011
JOHN LEY
CLERK

Agency No. A098-981-824


JIN FU WENG,

                                                                    Petitioner,

versus

U.S. ATTORNEY GENERAL,

                                                                    Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(June 14, 2011)

Before TJOFLAT, EDMONDSON and FAY, Circuit Judges.

PER CURIAM:

Jin Fu Weng, a native and citizen of the People's Republic of China, petitions this Court for review of the Board of Immigration Appeals' ("BIA") decision affirming the Immigration Judge's ("IJ") denial of his application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture ("CAT"), 8 U.S.C. §§ 1158(a), 1231(b)(3), 8 C.F.R. § 208.16(c), and denying his motion for a remand based on new evidence, 8 C.F.R. § 1003.2(c). Weng contends that the BIA failed to adequately consider whether he had a well-founded fear of future persecution based on his opposition to China's coercive family planning policy. In addition, Weng argues that the BIA abused its discretion by denying his motion for a remand based on new evidence of his involvement in Falun Gong. For the reasons stated below, we deny the petition for review.

## I.

The Department of Homeland Security issued Weng a Notice to Appear, alleging that he was a native and citizen of China who entered the United States without being admitted or paroled by an immigration officer. The notice charged that Weng was removable under INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled. Weng admitted the allegations in the Notice to Appear and conceded

2

removability. He applied for asylum, withholding of removal, and CAT relief.

At an asylum hearing, Weng testified that he was born in Changle City, Fujian Province, China. He was married, and he and his wife had two daughters. On September 16, 1999, birth control officers came to the family's house and told Weng that his wife would have to be sterilized because the couple was not allowed to have any more children. Weng argued with the officers and tried to stop them from taking his wife, but the officers took his wife away and forced her to undergo a sterilization procedure.

Weng testified that he was angry and unhappy over what had happened to his wife. He told his neighbor that the birth control officers did not respect human rights and were not human beings. He also declared that he wanted to leave China and go to the United States. When the birth control officers heard about Weng's criticisms, they came to his house and told him that they would sterilize him if he continued to speak out against them. After two unsuccessful attempts to leave China, Weng finally was able to come to the United States in 2005. He feared that he would be fined, imprisoned, and sterilized if he returned to China.

The record included a copy of the U.S. State Department's 2008 Country Report on Human Rights Practices in China. According to the 2008 Country Report, the Chinese government sometimes used coercive measures to enforce its

3

population control policy. Parents with two children often were pressured to undergo sterilization. The report also explained that the Chinese government had continued a crackdown against the Falun Gong movement. According to Falun Gong sources, more than 100,000 members had been sentenced to reeducation through labor camps, and thousands died from torture while in custody. Most practitioners were punished administratively, but "core leaders" of the Falun Gong were singled out for particularly harsh treatment. Even practitioners who did not engage in public demonstrations were sometimes sent to labor camps or forced to attend anti-Falun Gong classes.

The IJ issued an oral decision denying Weng's applications for asylum, withholding of removal, and CAT relief. First, the IJ concluded that Weng's story lacked credibility. Moreover, even assuming that Weng's testimony was credible, the IJ concluded that he had not met the standard for asylum. The IJ explained that the family planning officials' threats to sterilize Weng did not rise to the level of past persecution. In addition, the IJ determined that Weng did not have a well-founded fear of future persecution. The IJ observed that, after Weng was threatened with sterilization, he continued to live in China for five years without incident, and there was no evidence that the officials had been searching for him since his departure from China. Accordingly, the IJ denied Weng's application for

asylum. Because Weng had failed to meet the standard for asylum, the IJ concluded that he necessarily was unable to meet the higher standard for withholding of removal. Finally, the IJ denied Weng's claim for CAT relief because he had not shown that he would be tortured by, or with the acquiescence of, a Chinese government official.

Weng appealed the IJ's decision to the BIA. He also filed a motion to remand his case for further proceedings due to the fact that he recently had begun to practice Falun Gong. In a supporting affidavit, Weng explained that he had been suffering from depression following the denial of his asylum application and the death of his mother. On the advice of his wife, he started practicing Falun Gong, and he discovered that the exercises had a good effect on his mental health. In March 2010, Weng went to the "Global Service Center for Quitting Chinese Communist Party," where he denounced the Communist Party, disassociated himself from the Communist Youth Group, and formally joined the Falun Gong movement. Weng feared that he would be imprisoned if he returned to China because the Chinese government considered Falun Gong to be an "evil cult."

Weng presented a series of documents in support of his motion for a remand. First, he submitted a psychiatric evaluation, which indicated that he had been diagnosed with major depressive disorder and psychosis. Weng also

5

provided a letter from his wife in which she advised him to begin practicing Falun Gong. In addition, he presented a certificate from the Global Service Center for Quitting Chinese Communist Party, which stated that Weng "has realized the evil nature of the Chinese Communist Party and registered for quitting the Chinese Communist Party and/or its affiliated organizations." Finally, Weng submitted a series of photographs apparently showing him at the Global Service Center.

The BIA dismissed Weng's appeal. The BIA did not adopt the IJ's adverse credibility finding, but did agree with the IJ's alternative conclusion that Weng had not met his burden of proof for asylum, withholding of removal, or CAT relief. First, the BIA concluded that Weng had not experienced past persecution in China. The BIA found that Weng's criticisms of the family planning officials did not amount to "other resistance" to China's family planning policy, and concluded that the family planning officials' threats to sterilize Weng did not rise to the level of persecution.

Next, the BIA determined that Weng did not have a well-founded fear of future persecution. The BIA noted that Weng apparently had "worked uneventfully as a fisherman until he left China." The BIA concluded that Weng had not established an objectively reasonable possibility that he would be sterilized or otherwise harmed based on his earlier resistance to the family

6

planning program. Therefore, the BIA affirmed the denial of Weng's asylum application. Because Weng did not satisfy the standard for asylum, the BIA further concluded, he was unable to meet the higher standard for withholding of removal. In addition, the BIA determined that Weng was not entitled to CAT relief because he had not shown that it was more likely than not that he would be tortured by, or with the acquiescence of, a government official.

The BIA also denied Weng's motion for a remand. The BIA noted that mere involvement in the Falun Gong movement does not, in and of itself, entitle a person to asylum in the United States. Citing the 2008 Country Report, the BIA noted that the Chinese government reserved the harshest punishments for Falun Gong leaders, and pointed out that there was no evidence that Weng held a leadership role in the Falun Gong movement. The BIA further observed that there was no evidence that the Chinese government was even aware of Weng's "limited and very recent" practice of Falun Gong in the United States. Because Weng had not made a *prima facie* showing that he would be entitled to asylum based on his practice of Falun Gong, the BIA concluded that no remand was warranted.

II.

When the BIA issues a decision, we review only that decision, except to the extent that it adopts the IJ's opinion or reasoning. *Al Najjar v. Ashcroft*, 257 F.3d

1262, 1284 (11th Cir. 2001). Here, the BIA issued its own decision without adopting the IJ's opinion or reasoning, so we review only the BIA's decision. We review the BIA's factual findings to determine whether they are supported by substantial evidence. *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026-27 (11th Cir. 2004) (*en banc*). "[W]e view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Id.* at 1027. We may reverse the BIA's factual findings only when the record compels a reversal. *Id.*

The Attorney General has discretion to grant asylum to any alien who is determined to be a refugee. INA § 208(b)(1), 8 U.S.C. § 1158(b)(1); 8 C.F.R. § 208.13(a). An applicant qualifies as a refugee if he has suffered past persecution, or has a well-founded fear of future persecution, in his country of origin. 8 C.F.R. § 208.13(b); *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1351 (11th Cir. 2009). The burden of proof is on the applicant to establish that he is a refugee. INA § 208(b)(1)(B)(i), 8 U.S.C. § 1158(b)(1)(B)(i); *Kazemzadeh*, 577 F.3d at 1351.

To establish asylum based on past persecution, the applicant must show that he was persecuted on account of a protected ground. 8 C.F.R. § 208.13(b)(1); *Kazemzadeh*, 577 F.3d at 1351. We have explained that "persecution is an

8

extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and that mere harassment does not amount to persecution." *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1231 (11th Cir. 2005) (quotations and alteration omitted) (concluding that menacing phone calls and threats did not rise to the level of persecution). In the absence of past persecution, an applicant may establish a well-founded fear of persecution by showing that there is a reasonable possibility that he will be persecuted if he is returned to his country of origin. 8 C.F.R. 208.13(b)(2); *Kazemzadeh*, 577 F.3d at 1352. The applicant must show that his fear of persecution is both "subjectively genuine and objectively reasonable." *Al Najjar*, 257 F.3d at 1289.

> Congress has provided that
>
> a person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

INA § 101(a)(42), 8 U.S.C. § 1101(a)(42). An individual whose spouse has been forced to undergo an abortion or sterilization procedure is not automatically entitled to refugee status. *Yu v. U.S. Att'y Gen.*, 568 F.3d 1328, 1332-33 (11th Cir.

9

2009); *Matter of J-S-*, 24 I. & N. Dec. 520, 523-24 (A.G. 2008).  Rather, the applicant must show that he or she personally was forced to undergo an abortion or sterilization procedure, has a well-founded fear of being forced to do so in the future, or has a well-founded fear of persecution based on "other resistance" to a population control program.  *Yu*, 568 F.3d at 1333.

To qualify for withholding of removal, an applicant must establish that his life or freedom would be threatened in his country of origin on account of a protected ground.  *See* INA § 241(b)(3)(A); 8 U.S.C. § 1231(b)(3)(A).  The applicant must demonstrate that he would more likely than not be persecuted upon being returned to his country of origin.  *Sepulveda*, 401 F.3d at 1232.  An applicant who is unable to satisfy the standard for asylum generally will be unable to meet the more stringent standard for withholding of removal. *Id.* at 1232-33.  To establish eligibility for CAT relief, the applicant must demonstrate that it is more likely than not that he would be tortured if he is removed to the designated country of removal.  8 C.F.R. § 208.16(c)(2).  An applicant who is not eligible for asylum generally will be unable to meet the higher standard for CAT relief.  *Al Najjar*, 257 F.3d at 1303.

In this case, substantial evidence supports the BIA's finding that Weng did not have a well-founded fear of future persecution based on his opposition to China's family planning policy.  As the BIA observed, Weng did not present any

10

evidence that he had any problems with the birth control officers between 1999 and his departure from China in 2005. Thus, he failed to establish an objectively reasonable possibility that birth control officers would target him for persecution if he returned to China. *See Kazemzadeh*, 577 F.3d at 1352. Although Weng suggests that the IJ and the government should have asked him additional questions to see if he had any further troubles with the family planning officials before he left China, the burden of proof was on him, not on the agency, to produce evidence supporting his claim for asylum. *See* INA § 208(b)(1)(B)(i), 8 U.S.C. § 1158(b)(1)(B)(i); *Kazemzadeh*, 577 F.3d at 1351.

Because Weng could not meet the standard for asylum, he necessarily was unable to meet the higher standard for withholding of removal. *See Sepulveda*, 401 F.3d at 1232-33. In addition, substantial evidence supports the BIA's denial of Weng's claim for CAT relief. Although forced sterilization could be considered a form of torture, the record does not compel the conclusion that Weng is likely to be forcibly sterilized if he returns to China. As noted above, after the birth control officials threatened to sterilize Weng, he was able to remain in China for five years without further incident. Because Weng did not establish that he would more likely than not be tortured upon his return to China, the BIA properly denied his claim for CAT relief. *See* 8 C.F.R. § 208.16(c)(2).

A motion to remand a case based on new evidence is generally treated as a motion to reopen under 8 C.F.R. § 1003.2(c). *Al Najjar*, 257 F.3d at 1301; *Matter of Coelho*, 20 I. & N. Dec. 464, 471 (BIA 1992). We review the BIA's denial of a motion to reopen for an abuse of discretion. *Zhang v. U.S. Att'y Gen.*, 572 F.3d 1316, 1319 (11th Cir. 2009). "This review is limited to determining whether the BIA exercised its discretion in an arbitrary or capricious manner." *Id.* The BIA may deny a motion to reopen if the applicant's new evidence fails to establish a *prima facie* case for asylum. *Al Najjar*, 257 F.3d at 1302. The applicant bears the "heavy burden" of showing that his new evidence would likely change the outcome of the case. *Ali v. U.S. Att'y Gen.*, 443 F.3d 804, 813 (11th Cir. 2006); *Matter of Coelho*, 20 I. & N. Dec. at 473.

Here, Weng's new evidence regarding his involvement in Falun Gong did not establish that he was *prima facie* eligible for asylum, withholding of removal, or CAT relief. First, Weng did not show that the Chinese government is even aware that he has started practicing Falun Gong. Weng may have criticized China's family planning policies in the past, but there is no evidence that the Chinese government has identified him as a dissident or has continued to monitor his activities. Weng argues that he has engaged in demonstrations against the

12

Chinese government, but the only record evidence that he cites is the certificate and photographs from the Global Service Center for Quitting Chinese Communist Party. It is not apparent that this certificate or any demonstrations that Weng may have engaged in have come to the attention of the Chinese authorities.

Even if the Chinese government were to learn of Weng's involvement in Falun Gong, it is far from clear that Weng would be singled out for persecution. *Cf. Zheng v. U.S. Att'y Gen.*, 451 F.3d 1287, 1292 (11th Cir. 2006) ("Involvement with Falun Gong in China by itself does not entitle a person to asylum in the United States."). The 2008 Country Report indicates that the harshest punishments are imposed on Falun Gong leaders, not ordinary practitioners such as Weng. Although some Falun Gong adherents were sentenced to reeducation through labor camps, others were only required to take anti-Falun Gong classes. Thus, it is not apparent that any mistreatment that Weng might experience would be serious enough to constitute persecution. Because Weng's new evidence did not establish that he was *prima facie* eligible for asylum, the BIA did not abuse its discretion by denying his motion for a remand. *See Al Najjar*, 257 F.3d at 1302; *Zhang v. U.S. Att'y Gen.*, 572 F.3d at 1319.

Accordingly, after review of the administrative record and the parties' briefs, we deny the petition for review.

13

**PETITION DENIED.**